PEOPLE v BELL

Opinion of the Court

1. Jury—Number of Jurors—Judge's Discretion—Statutes.

A trial judge has broad discretion to empanel a jury of not less than 12 nor more than 14 jurors and to reduce the number to 12, therefore no abuse of discretion occurred where a jury of more than 12 was empanelled and one of the jurors, who absented herself and could not be located, was dismissed (MCLA 768.18; MSA 28.1041).

2. Witnesses—Criminal Law—Indorsed Witnesses—Production of Witnesses—Due Diligence—Judge's Discretion.

The question of whether the people have shown due diligence in an effort to produce indorsed witnesses at trial is a matter for the discretion of the trial judge, whose decision will be overturned only where a clear abuse of discretion is shown; a finding of due diligence was not an abuse of discretion where multiple attempts were made to locate the witnesses, commencing several weeks before the defendant's second trial, and where defense counsel did not press for production of the witnesses when their testimony from the first trial was made available because of a claimed inability to locate the witnesses.

3. Discovery—Criminal Law—Evidence—Opportunity for Cross-Examination.

Discovery in a criminal case is a matter within the discretion of the trial court and generally a denial of discovery is not

References for Points in Headnotes

[1] 47 Am Jur 2d, Jury § 127.
[2] 81 Am Jur 2d, Witnesses § 74.
[3] 21 Am Jur 2d, Criminal Law § 331.
[4] 5 Am Jur 2d, Arrest § 46.
[5] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 17, 18.
[6] 21 Am Jur 2d, Criminal Law § 21.
[7] 30 Am Jur 2d, Evidence § 1082.
[8] 30 Am Jur 2d, Evidence § 973.
[9, 10] 29 Am Jur 2d, Evidence §§ 844, 845.

reversible error if the defendant is afforded full opportunity of cross-examination.

4. ARREST—RELIANCE ON RADIO TRANSMISSION.

A police officer, when making an arrest, may rely on information transmitted by radio from another police officer examining an official record.

5. CRIMINAL LAW—AUTOMOBILES—REASONABLE BASIS FOR STOP— LEIN SYSTEM.

Police officers had a reasonable basis for stopping an automobile where a radio check with the LEIN system revealed an outstanding warrant for the owner of the automobile for failure to pay a traffic fine, even though the fine had been paid earlier that day, because information conveyed by the LEIN system may be relied on, provided there is no undue delay between the time a traffic ticket underlying a valid warrant is paid and the time the LEIN system cancels the warrant.

6. CRIMINAL LAW—EVIDENCE—NEWLY DISCOVERED EVIDENCE—WITNESSES—IMPEACHMENT—PERJURY.

A trial court conducting a retrial of a defendant erred by disallowing newly discovered evidence of perjury by the arresting officer in a similar case; such new evidence might impair the credibility of the officer and would be of such quality as to render a different result probable on retrial.

7. CRIMINAL LAW—EVIDENCE—WITNESSES—IMPEACHMENT—SIMILAR TESTIMONY.

Evidence showing that an arresting officer testified in earlier cases regarding similar circumstances under which an arrest was made that the defendant allegedly attempted to divest himself of contraband while fleeing from the officer is not admissible for the purpose of impeaching the officer's testimony.

8. CRIMINAL LAW—EVIDENCE—WITNESSES—IMPEACHMENT—PERJURY.

An affidavit by a command police officer stating that he has personal knowledge that the arresting officer in a case has falsified charges against another defendant in a separate case is not direct evidence of perjury in the case at bar and is not admissible for purposes of impeachment of the arresting officer's testimony.

9. EVIDENCE—WITNESSES—IMPEACHMENT—PERJURY—PRIOR TESTIMONY.

The official transcript of testimony of a witness, given in court

under oath, that he committed perjury in some prior judicial proceeding may be used to impeach the credibility of the witness at a subsequent trial.

Concurrence by T. M. Burns, J.

10. See headnote 9, *supra.*

Appeal from Wayne, James L. Ryan, J. Submitted November 9, 1976, at Detroit. (Docket No. 24787.) Decided March 28, 1977.

Titus Bell was convicted of unlawful possession of heroin. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Research, Training and Appeals, and *Samuel C. Damren,* Assistant Prosecuting Attorney, for the people.

*Roger L. Wotila* and *Paul E. Bennett,* Assistant State Appellate Defenders, for defendant.

Before: Allen, P. J., and T. M. Burns and Beasley, JJ.

Allen, P. J. Where a complaining witness has, under a grant of immunity, previously given testimony in court under oath that he committed perjury in a prior trial, may such admission be used to impeach the credibility of such witness in a subsequent unrelated trial? Or is the admission precluded by *People v Falkner,* 389 Mich 682; 209 NW2d 193 (1973)? This issue of first impression, as well as a second issue of first impression relating

to information received in the LEIN system, arises on the following facts.

On a complaint brought by patrolman Raymond Smith of the Ecorse Police Department, defendant was charged with unlawful possession of the controlled substance, heroin, in contravention of MCLA 335.341(4)(a); MSA 18.1070(41)(4)(a). He was tried by jury in the Circuit Court for Wayne County, found guilty and, on January 6, 1975, sentenced to a term of two to four years in prison. Motion for a new trial was granted January 21, 1975, and defendant was released upon a $2,500 surety bond.[1] At the beginning of the second trial in March 1975, defense counsel moved to dismiss based upon information that the complainant, Raymond Smith, was the object of a pending perjury investigation and that his testimony lacked credibility. The motion was denied and defendant was again tried by jury.

At trial, defense counsel sought to impeach Officer Smith by twice inquiring why he was no longer employed as a police officer. Objection to the questions was sustained and defendant was found guilty of the offense charged. May 8, 1975, he was sentenced to a term of 14 months to 4 years in prison and, having served the minimum sentence, is now on parole. On appeal to us he initially briefed four issues. On the day of oral argument he raised two new issues and moved to remand to the trial court for a full evidentiary hearing on newly discovered evidence or, in the alternative, that leave be granted to file a supplementary brief discussing the new issues. The second request was granted.

---

[1] The record is silent as to the reasons justifying the motion for a new trial. Likewise, the record is silent as to why the order for a new trial was granted.

Of the four errors[2] initially briefed, alleged errors (2), (3) and (4) may be disposed of summarily. Contrary to appellant's claim, juror #13 was not dismissed arbitrarily. The transcript discloses that the juror absented herself and was not present and the sheriff had no knowledge of where the juror was. Broad discretion is given the trial judge to empanel a jury of not less than 12 but not more than 14, with further discretion to reduce the number to 12. MCLA 768.18; MSA 28.1041. Given the fact that 12 jurors would still be left, we find no abuse of discretion.

Due diligence is required of the people to produce witnesses whose names are endorsed on the information. *People v Zabijak,* 285 Mich 164, 171–172; 280 NW 149 (1938). What constitutes "due diligence" is set forth in *Barber v Page,* 390 US 719; 88 S Ct 1318; 20 L Ed 2d 255 (1968). Application of the *Barber* standard to the transcript discloses multiple attempts to locate the three witnesses. Police efforts to track down the persons named commenced several weeks before trial and continued through the first day of trial. Two of the three witnesses had testified at the first trial and when presented with the availability of their testimony, defense counsel did not press for production of the witnesses.

The question of whether due diligence has been shown is a matter for the discretion of the trial court whose decision will be overturned on appeal

---

[2] (1) The stop of defendant's automobile was unreasonable because it was based on incorrect information obtained from the LEIN system about an outstanding traffic warrant which was no longer outstanding; hence, the illegality of the stop makes the seized contraband "fruit of the poisonous tree" and inadmissible; (2) Insufficient reasons were given for the dismissal of juror #13; (3) failure of the prosecution to use due diligence to find three res gestae witnesses; (4) denial of defendant's request for an independent analysis of a sample of the alleged heroin.

only where a clear abuse of discretion is shown. *People v Rimson,* 63 Mich App 1; 233 NW2d 867 (1975). On the basis of the record we find no abuse of discretion.

Ten days prior to trial, defendant moved to permit the taking of a sample of the heroin allegedly seized from defendant. The motion was denied without opinion. It is argued that the independent sampling was crucial since the substance introduced at trial was tan or brown-tan in color whereas the substance allegedly thrown beneath the automobile was described as a white powder. The law on criminal discovery is evolving[3] but, in this state, has not yet reached the point where the opportunity to conduct an independent scientific examination with an expert of one's own choice is a right inherent in due process. The controlling Michigan decision, *People v Maranian,* 359 Mich 361; 102 NW2d 568 (1960), leaves discovery to the trial court's discretion. GCR 1963, 785.1(2) prohibits civil discovery rules from being applied in criminal cases and, to date, special rules for discovery in criminal cases have not been promulgated. Generally, a trial court's denial of criminal discovery is not reversible if, as in the instant case, defendant is afforded full opportunity of cross-examination. *People v Maranian,* 359 Mich 361, 369; 102 NW2d 568 (1960). See *People v Ranes,* 58 Mich App 268, 274; 227 NW2d 312 (1975).

Was the stop of the automobile unreasonable because it was based on incorrect information in the LEIN system? The question posed presents an issue of first impression, the resolution of which necessitates a further statement of facts. Early in

---

[3] *United States v Tirado,* 25 FRD 270 (SD NY 1958); *Jackson v State,* 243 So 2d 396 (Miss 1970); *State v Migliore,* 261 La 722; 260 So 2d 682 (1972); *James v Commonwealth,* 482 SW2d 92 (Ky 1972).

the evening of August 22, 1974, while on routine
patrol duty in the city of Ecorse, police officers
Raymond Smith, Alvin Demings and Jimmie King
spotted defendant driving a four-door Oldsmobile.
At the time, defendant was not speeding or violat-
ing any laws. However, Officer Smith had run a
license plate check on defendant's car several days
earlier when he had observed the car parked in
front of a known drug house and found there was
an outstanding traffic warrant against defendant.
A radio call, sometimes known as a LEIN check,
was made and a response received that the war-
rant was still outstanding for failure to pay a
traffic ticket fine. Unbeknownst to the officers, the
traffic ticket had been paid earlier that day.[4]
Promptly, the officers pulled their car in front of
the Oldsmobile which was then stopped. Upon
being stopped, the defendant leaped from his car
and started running. As he did so, Officers Smith
and Demings saw him reach into his shirt pocket,
pull out a coin envelope and throw it on the
ground under the front end of the car. The enve-
lope was retrieved by Officer Smith and later
found to contain heroin. Conceding that a police
stop on the basis of an outstanding warrant is
reasonable, even if knowledge of the warrant
comes second-hand through the LEIN system, de-
fendant argues that when the LEIN system is in
error the stop is no longer reasonable. In support
of this assertion *Whiteley v Warden,* 401 US 560; 91
S Ct 1031; 28 L Ed 2d 306 (1971), is cited. In that
case a patrolman, relying on information transmit-

---

[4] Plaintiff contests the assertion that the ticket had been paid.
Plaintiff points out that the time of payment of the ticket is not of
record and thus may have been paid some time after Bell's arrest.
However, for purposes of this opinion, we will assume that the ticket
was paid some time prior to defendant's arrest but before report of
payment had been made to the LEIN computer.

ted over the state radio network that there was an outstanding warrant for petitioner, stopped and then searched petitioner's car. Subsequently it was found that the warrant had been issued without probable cause. We find *Whiteley* distinguishable. There, unlike the instant case, the warrant relied upon by the arresting officer was not supported by probable cause and was invalid *ab initio.* The *Whiteley* situation is similar to *People v Parisi,* 393 Mich 31; 222 NW2d 757 (1974), where the initial stop of the vehicle was without a reasonable basis. But, in the instant case, the warrant was based on probable cause and was valid from the beginning. In *People v Dixon,* 392 Mich 691; 222 NW2d 749 (1974), the Supreme Court stated that a police officer may rely on information transmitted by radio from another police officer examining an official record.[5] Since the patroling Ecorse officer had a right to rely on the information which, in turn, was based on a valid warrant, the officers had a reasonable basis on which to make the stop. The sole issue is whether the officers were lawfully in a position to see defendant throw a coin envelope beneath his car. Provided there is no undue delay between the time the ticket underlying a valid warrant is paid and the time that the LEIN system cancels the warrant, we find officers may rely on information conveyed by the LEIN system. For the foregoing reasons we hold in plaintiff's favor on the four issues initially briefed on appeal.

At oral argument two additional grounds for

[5] "We hold that in deciding whether to arrest for the misdemeanor of driving without an operator's license, a police officer may properly rely on information obtained by radio from another police officer who is examining an official record, that such information becomes part of the arresting officer's knowledge which he can consider in deciding whether a law violation has occurred in his presence." *People v Dixon,* 392 Mich at 699.

reversal were raised on a motion to remand.[6] We reject the allegation of suppression since it appears to us that a substantial portion of the facts relied upon were either not known by the prosecution at the time of trial or, in fact, occurred after defendant's trial. As to the second ground for error, *viz.*, newly discovered evidence, we ordered supplemental briefs.[7] Two issues emerge upon examination of the comprehensive supplemental briefs submitted in response to our order: (1) if the newly discovered evidence is admissible, is a different result probable on retrial, and (2) if so, is such evidence admissible under the present rules of evidence?

In response to the first question, we note that at trial defendant presented two defenses. One was the technical legal defense, rejected by us, that the original stop, being based upon inaccurate LEIN information, was unreasonable. The second was factual, namely, that defendant did not throw a coin envelope on the ground. The chief witnesses for the prosecution were Ecorse police officers Raymond Smith and Al Demings, especially Raymond Smith who testified he retrieved the coin

[6] The motion to remand states the two new issues as follows: (1) The people suppressed evidence extremely relevant to the credibility of a key prosecution witness; (2) Newly discovered evidence entitled appellant to a new trial.

[7] "IT IS ORDERED on the Court's own motion that:

"1. Within 10 days from the date of certification of this order plaintiff shall, by brief, respond to the allegations of newly discovered evidence made in defendant's motion to remand. Specifically, said brief shall include (a) reasons, if any, why said motion to remand should be denied, (b) what reason, if any, distinguishes this cause from *People v William Louis Harrington, supra,* [Docket No. 23935, a virtually identical case] and the action taken by a separate panel of this Court to remand in said case.

"2. Within 7 days from receipt of plaintiff's brief as above ordered, defendant may, at his option, respond to said brief. Included within said response defendant shall brief how evidence of alleged perjury by Officer Raymond Smith could be introduced at a new trial, given Michigan's rules on impeachment." Order 11/26/76.

envelope in which the narcotic was subsequently found. Obviously, the credibility of officers Smith and Demings was critical. In defendant's motion to remand, new facts are asserted attacking the credibility of Smith and Demings. Succinctly stated, they are: (a) approximately six months before defendant's trial, Officer Smith testified under a grant of immunity before a citizens' grand jury that he had accepted a $1,000 bribe in exchange for his false testimony in the trial of one Aaron Atkins charged with carrying a concealed weapon; that Officer Smith repeated these admissions in testimony in the state's subornation of perjury case *People v Lillie Harville;* (b) at the time of defendant's trial, Officer Smith had been fired from the Ecorse Police Department because of his admitted perjury and bribery; (c) Officer Smith falsified a complaint in another case with respect to one Gregory Lewis; that Gregory Lewis appears to be the same person who testified at defendant's trial that defendant did not pull an envelope from his pocket and throw it beneath the automobile; (d) in the trial of *People v William Louis Harrington,*[8] Officers Demings and Smith testified that after observing the defendant disobey a stop sign, defendant was stopped by the officers whereupon defendant pulled a plastic bag from his pocket, ran down an alley and tossed the bag into some bushes; that Officer Smith then retrieved the bag which was found to contain heroin; that defendant denied that he threw a bag on the ground or was in possession of a controlled substance.

The factual allegations recited in (a) above, refer

---

[8] *See* fn 7, *supra.* Appeal from trial December 12, 1974, in Wayne County Circuit Court, Judge Horace Gilmore. Our file 23935. Following remand by another panel of this Court, Judge Gilmore granted the defendant's motion for a new trial in *People v Harrington* on February 4, 1977.

to Officer Smith's admission of perjury. Such facts seriously impair the credibility of the witness. Had defense counsel been permitted to bring these facts to the attention of the jury, it is not at all improbable that the jury would have accepted defendant's version of the incident rather than accepting the officer's recitation. In our judgment, the newly discovered evidence of perjury by the arresting officer was of such quality as to render a different result probable on retrial and, assuming that such testimony would be admissible under present rules of evidence, error was committed when it was disallowed. The situation is similar to *People v LoPresto,* 9 Mich App 318; 156 NW2d 586 (1967). In that case a plant guard named Butler testified that defendant was the aggressor in a shooting incident for which defendant was charged with assault with attempt to murder. When asked on cross examination whether he had been convicted of any crime Butler responded his only conviction was on a charge of drunk driving. When newly discovered evidence disclosed that, in fact, Butler had been twice arrested and convicted of assault, defendant moved for a new trial. The motion was denied by the trial court. Our Court reversed, saying:

"By his deliberately false testimony concerning his criminal record he deprived the jury of information which they could legitimately use in judging his credibility. A different appraisal of his worthiness of belief might well lead to a different result in a new trial. *United States v Gordon* (DC, 1965), 246 F Supp 522; *United States v Senft,* (ED NY 1921), 274 F 629. Without a new trial, the verdict would be forever beclouded by the possibility that the jury unwittingly acted upon false testimony of an undisclosed perjurer and convict." *LoPresto, supra,* at 328.

*People v Kennedy,* 22 Mich App 524, 528; 177
NW2d 669 (1970), and *People v Boynton,* 46 Mich
App 748, 750; 208 NW2d 523 (1973), are distin-
guishable. In both cases our Court evaluated the
newly discovered evidence which the defendant
alleged affected the credibility of the complainant
and concluded it was insufficient to make a differ-
ent result probable on retrial. In the case before us
we evaluate the newly discovered evidence of Offi-
cer Smith's perjury differently. A police officer's
testimony is generally given greater respect and
weight than that of a citizen complainant.[9]

We believe it unnecessary to decide whether the
question asked upon cross examination of Officer
Smith concerning his discharge from the police
force (recited in the allegations in paragraph (b)
above) was proper. Earlier cases suggest the pro-
priety of the question is within the province of the
trial court. 1 Gillespie, Michigan Criminal Law &
Procedure (2d ed), § 446, p 549. Later cases, partic-
ularly *People v Rappuhn,* 390 Mich 266; 212
NW2d 205 (1973), suggest the question would be
barred as collateral. Since we believe that counsel
only asked the question in an attempt to intro-
duce, through the back door, evidence of perjury
which the trial court prevented him from introduc-
ing through the front door we suggest that upon
retrial the question not be asked.

The allegations recited in paragraph (d) above
refer to prior "dropsy scenario" incidents. We find
no error in the trial court's disallowance of this
testimony for impeachment purposes. Admittedly,
evidence of prior "dropsy scenario" episodes may
suggest fabrication in the case at hand. But the
mere fact that the arresting officer similarly testi-

---

[9] In *Kennedy, supra,* the newly discovered evidence indicated that
the complainant—a prostitute—had perjured herself. The nature of
the perjury was not set forth in the opinion.

fied in earlier cases does not prove that any of his testimony was false. It could well be true that the facts were precisely as the officer claimed. Flight from an arresting officer and attempts to divest oneself of the suspect material are common occurrences. Admission of such evidence for impeachment purposes is not presently allowed in Michigan. *People v Falkner, supra* and *infra.* Furthermore, prejudice which would flow from the allowance of such testimony would far outweigh the benefits. Accordingly, we hold that prior trial "throwing the packet on the ground while fleeing" type testimony may not be introduced for impeachment purposes.

For similar reasons, remand to the trial court for the purpose of conducting an evidentiary hearing to determine whether a complaint against Gregory Lewis was falsified by Smith [paragraph (c)] would, in our opinion, be fruitless because the evidence would not be admissible. *People v Falkner, supra* and *infra.*

We have before us an affidavit by a command officer of the Ecorse Police Department. That affidavit states that the officer has personal knowledge that Officer Smith falsified charges against Gregory Lewis. We find the affidavit to be indirect but powerful evidence of perjury in the present case; but we cannot allow its admission without creating an impossible situation. If this testimony were admitted, we would also have to allow Louis Harrington (and all other defendants previously charged by Officer Smith) to be called in this case to testify that Smith also falsified the charges on which they were tried and/or convicted. Similarly, in all future cases, defendants would be able to call as impeaching witnesses all persons previously charged by a common complaining witness. The

only way out of the dilemma would be to hold that we believe impeaching testimony when it comes from fellow police officers, but not when it comes from more typical defense witnesses. For obvious reasons, we reject such a distinction and therefore conclude that the affidavit may not be admitted. Note, however, that the result would be different if the command officer had *direct* evidence that Officer Smith committed perjury in this case.

We now turn to the second question raised by the supplemental briefs, *viz.,* is Officer Smith's testimony under a grant of immunity that he perjured himself in another case admissible under present rules of evidence. The people assert such testimony is not admissible and cite what has become known as the *Falkner-Brocato* rule in support thereof:

> "We hold that in the examination or cross-examination of *any witness,* no inquiry may be made regarding prior arrests or charges against such witness which did not result in conviction; neither may such witness be examined with reference to higher original charges which have not resulted in conviction, whether by plea or trial." (Emphasis supplied.) *People v Falkner,* 389 Mich 682, 695; 209 NW2d 193 (1973).

Because the admission of perjury was made under a grant of immunity the witness has not been "convicted". Defendant argues that despite the language of *Falkner* laying down an absolute rule applying to "any witness", an exception should be made where perjury has been confessed before a grand jury and again confessed under oath at a trial in Recorder's Court.[10]

---

[10] There appears to be no question but that on September 9, 1974, Officer Smith testified before a Wayne County Citizens' Grand Jury that he received $1,000 for giving false testimony on a carrying a concealed weapons charge in Recorder's Court. These admissions were

The issue posed is one of first impression. Though *Falkner* employs all-inclusive language it is obvious that the *Falkner* Court did not consider the issue posed in the present case. Instead, *Falkner* was limited to the issue of the admissibility in evidence of charges or arrests vis-a-vis convictions. The court reasoned that since an individual may be charged or arrested for an offense of which he may never be tried, or tried and found not guilty, or the charge dismissed, the truth-seeking function of a trial and the protection of the individual would best be served if only convictions could be used for impeachment purposes. Convictions are specific and definite proof of past misconduct whereas charges or arrests are only inferences of misconduct. To our mind a confession of perjury made before a judicial body (citizens grand jury) is just as specific and as credible proof of misconduct as a conviction. It is all the more credible where, as here, the confession is repeated and is on record in a trial court. The high standard of *Falkner* is maintained with a sworn judicial admission, and the fact that immunity was granted is no detraction. The following rule is suggested:

Where a witness has previously given testimony in court under oath that he committed perjury in some prior judicial proceeding, the official transcript of the testimony containing the admission may be used to impeach the credibility of the witness at a subsequent trial.

Adoption of such a rule is admittedly a limited extension of *Falkner*. Nevertheless, we believe adoption is necessary in order to afford a fair trial. Preclusion of the officer's perjury in the instant case, in our opinion, results in a denial of defend-

repeated by Smith in preliminary examination and trial testimony in *People v Lillie Harville, supra.*

ant's constitutional right to confrontation and a fair trial. We further believe that adoption of the rule will be salutary in future cases. Though it is the accused who benefits in the instant case, it is more likely the rule will benefit the prosecution in future cases.

Reversed.

BEASLEY, J., concurred.

T. M. BURNS, J. *(concurring)*. From the facts presently before us it is evident that defendant is entitled to a new trial. I agree with Judge ALLEN that where a witness has previously given testimony in court under oath that he committed perjury in some prior judicial proceeding, the official transcript of the testimony containing the admission may be used to impeach the credibility of the witness at a subsequent trial.

I would not, however, rule at this time on the admissibility of any other evidence relative to the credibility of any of the witnesses or other evidence of wrongdoing on the part of any witness. For this reason I concur in Judge ALLEN's opinion except insofar as it prospectively rules certain evidence inadmissible at the new trial.