*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
March 24, 2020

v

No. 346511
Wayne Circuit Court
LC No. 18-004559-01-NF

TAMEKIA DESHON YOUNG,

Defendant-Appellant.

Before: TUKEL, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals by right her jury trial convictions of assault with a dangerous weapon (felonious assault), MCL 750.82, and malicious destruction of personal property valued at $1,000 or more but less than $20,000 (MDOP), MCL 750.377a(1)(b)(*i*). She was sentenced to 18 months' probation for each conviction. We affirm.

This case arises out of back-to-back altercations involving defendant, Antonio Marion, and Nina Sealie. Marion is defendant's ex-boyfriend with whom she has two young children, and Sealie is Marion's ex-wife but current girlfriend. Sealie and Marion also have children together. The incidents took place in an apartment complex parking lot; Marion resided at the complex. Defendant and Marion had been arguing over who was going to care for their youngest child that particular day, and eventually defendant agreed to take the child. She placed the child in a safety seat in the back of her Chevy Impala. Around that time, Sealie arrived in her Ford C-Max after Marion had called her claiming that defendant was throwing bricks at a Dodge Charger that Marion was driving that day but which was owned by Sealie. The prosecution presented evidence of some heated verbal exchanges between defendant and Marion and between defendant and Sealie, along with evidence of a physical fight and tussle between defendant and Sealie. This fight occurred when Sealie reached into defendant's parked Impala as defendant sat behind the wheel. Marion

-1-

grabbed Sealie's shirt in an attempt to separate the women, defendant put the Impala in reverse, Sealie fell backward and hit her head, and the Impala then struck the Charger.[1]

The prosecution also presented evidence that, after Sealie briefly went into the apartment to retrieve keys and then returned to the parking lot, defendant drove her Impala into Sealie's unoccupied C-Max. There was testimony that as Sealie stood next to her C-Max after it was struck, defendant proceeded to bump into Sealie herself with the Impala, sideswipe the C-Max, and then strike Sealie a second time with the Impala. Sealie was hit twice by the Impala's bumper, and she suffered a nonlife-threatening knee injury. According to Sealie, she fell backward against the trunk of her C-Max after being struck the second time; the trunk of the C-Max popped open; Sealie grabbed a softball bat out of the trunk, and she smashed the Impala's windshield. Police soon arrived.

Defendant testified on her own behalf. She claimed that after the first altercation and when Sealie returned to the parking lot from the apartment, Sealie was carrying a baseball bat and then began hitting the Impala with the bat, damaging the windshield. Defendant became concerned for her safety and the safety of her child. Defendant at first did not testify to hitting the C-Max with her car. But she then conceded that she hit the C-Max when moving her Impala in an evasive response to Sealie's striking the Impala with the bat.[2] Marion then stopped Sealie by grabbing her and the baseball bat. Defendant claimed that she did not drive away after Sealie attacked with the baseball bat because she could not see out the shattered windshield. Defendant adamantly denied hitting Sealie with her Impala, and she had no idea how Sealie incurred a knee injury.

In defendant's brief on appeal, she first argues that trial counsel was ineffective by waiving arguments regarding jury instructions on self-defense and accident. Defendant contends that the jury should have been instructed on self-defense relative to the felonious assault charge and should have been instructed on "accident" relative to the MDOP charge.

Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court recited the governing principles applicable to a claim of ineffective assistance of counsel:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test . . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption

---

[1] This physical altercation did not serve as the basis of the felonious assault charge, and the MDOP charge was not predicated on defendant damaging the Charger. The jury was not instructed on lesser offenses to felonious assault and MDOP.

[2] Defendant additionally acknowledged that she had earlier hit the Charger, but that was also not on purpose.

that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Citations and quotation marks omitted.]

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). "When a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction." *Id.* "Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). A substantial defense is a defense that might have made a difference in the outcome of the trial. *Id.* The failure to request a particular jury instruction can be a matter of trial strategy, and counsel has wide discretion when it comes to matters of trial strategy. *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013). "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

After the close of testimony, the trial court addressed the jury instructions. Defense counsel requested an instruction on self-defense and defense of others. The prosecutor objected to a self-defense instruction because defendant did not testify that she hit Sealie with the Impala in self-defense; rather, defendant denied even hitting Sealie with the car. The court took a short break to look at the law governing self-defense, at which time defense counsel and the prosecutor chatted. When the trial court went back on the record, defense counsel indicated that he was withdrawing the request for an instruction on self-defense after the prosecutor assured counsel that she was not going to argue to the jury that an assault occurred during the initial physical altercation between defendant and Sealie. Defense counsel stated that a self-defense instruction would not be appropriate "with respect to the felonious assault involving the car" because his "client did say that she was trying to get away" and not that "she, at that point, was fighting." The trial court then expressed that the testimony did not support the elements of self-defense. Defense counsel retorted that he was not in complete agreement with the court because there was evidence that Sealie had wielded a baseball bat and hit the Impala with it. But defense counsel indicated that he ultimately agreed with the court "because my client did not say at that point in time that she was actually . . . defending herself . . . [and] didn't say she actually caused any physical damage to anybody." The trial court then stated, "So I'm not going to allow for the self-defense." An instruction on "accident" was not given, nor was it discussed on the record. Finally, defense counsel affirmatively expressed that he had no objections to the instructions given by the trial court.

Defendant waived any claim of instructional error regarding self-defense and accident by agreeing that a self-defense instruction would not be proper and by affirmatively approving the

instructions that did not include an accident instruction. See *People v Traver*, 502 Mich 23, 42; 917 NW2d 260 (2018). We do note, however, that it is quite evident that the trial court would not have given a self-defense instruction even had defense counsel argued in favor of such an instruction. Despite the waiver, "we will consider the jury instructions in the context of addressing defendant's claim that defense counsel was ineffective for not requesting instructions[.]" *People v Thorne*, 322 Mich App 340, 346; 912 NW2d 560 (2017).

MCL 780.972 provides, in pertinent part, as follows:

(1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

* * *

(2) An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

"A finding that a defendant acted in justifiable self-defense necessarily requires a finding that the defendant acted *intentionally*, but that the circumstances justified his actions." *People v Heflin*, 434 Mich 482, 503; 456 NW2d 10 (1990) (emphasis added); see also *People v Guajardo*, 300 Mich App 26, 43; 832 NW2d 409 (2013) ("At trial, defendant did not maintain that he intentionally shot [the victim] in self-defense."). When a person acts in lawful self-defense, that individual's actions are justified and she is not guilty of the charged crime. M Crim JI 7.15(1).

Defendant directs our attention to the evidence pertaining to the first altercation when defendant put the car in reverse and Sealie fell to the ground after the two had been fighting through the driver's side window. The flaw in this argument is that the felonious assault charge concerned the second altercation when defendant twice hit Sealie with defendant's Impala; the first altercation was not relevant to the charge. In closing argument, the prosecutor contended:

Now in this instance[] what we would be arguing, and based on the testimony here that was elicited during the course of this trial; . . . the battery here is striking of Ms. Sealie in the leg area. When she was struck by that vehicle that the defendant was driving. Now you heard about an initial fight between the two. And then you heard about this second incident after Ms. Sealie went into the house and she comes back out. And the defendant is ramming her car or striking Ms.

-4-

Sealie's car. And that' s when . . . Ms. Young drives into Ms. Sealie. Which is where the battery is.

Accordingly, defendant's self-defense argument that is focused on the circumstances surrounding the first altercation is unavailing. Given that matters temporarily settled down after the first altercation when Sealie went into the apartment, we conclude that defendant's subsequently hitting Sealie with the Impala cannot be considered self-defense in relation to anything Sealie did during the first altercation.

Defendant fails to present any argument or evidence that she acted in self-defense in regard to striking Sealie with her Impala; therefore, there is no need to go further. We will, however, briefly discuss self-defense in the context of the second altercation. Considering that self-defense requires proof of an intentional act, we find there was no evidentiary basis for a self-defense instruction because defendant testified that she did not even hit Sealie. Defendant did not testify that she intentionally drove her car into Sealie in self-defense. There simply was no testimony that defendant honestly and reasonably believed that the use of force was necessary to defend herself and her child from the imminent unlawful use of force by Sealie. Defendant did not assert that she hit Sealie with the Impala to fend off Sealie's attack with the baseball bat. Trial counsel correctly realized that a self-defense instruction was not justified by the evidence. Counsel is not ineffective for failing to advance a meritless position. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

With respect to the defense of accident, see M Crim JI 7.3a, we note that defendant argues that the instruction on accident should have been given because there was evidence that she hit the C-Max accidently.[3] Defendant is only arguing accident as a defense to the MDOP charge. Assuming that counsel's performance was deficient for not asking for an instruction on accident in connection with the MDOP charge, we again find that defendant has failed to demonstrate the requisite prejudice. *Carbin*, 463 Mich at 600. Under MCL 750.377a(1), MDOP requires proof that the defendant "willfully and maliciously" destroyed personal property. The jury was instructed consistent with M Crim JI 32.2, and subsection (4) of the instruction indicates that the prosecutor must prove beyond a reasonable doubt that a defendant acted "with the intent to damage or destroy the property." Even without an accident instruction, the jury would not have been able to convict her unless it concluded that she acted with the specific intent to damage the C-Max. Had the jurors accepted defendant's testimony that she hit the C-Max unintentionally and that she was simply trying to get away from Sealie, the jury could have acquitted her despite the absence of an instruction on accident. It did not. Therefore, there was no prejudice even if counsel's

---

[3] M Crim JI 7.3a provides:

> The defendant says that [he / she] is not guilty of [state crime] because [he / she] did not intend to [state specific intent required]. The defendant says that [his / her] conduct was accidental. If the defendant did not intend to [state specific intent required], [he / she] is not guilty. The prosecutor must prove beyond a reasonable doubt that the defendant intended to [state specific intent required].

performance fell below an objective standard of reasonableness. See *People v Hawthorne*, 474 Mich 174, 184-185; 713 NW2d 724 (2006) ("[W]e agree . . . that defendant has not met his burden of demonstrating that the failure to instruct on the accident defense undermined the reliability of the verdict," where the "jury instructions explaining the intent element of murder made it clear that a finding of accident would be inconsistent with a finding that defendant possessed the intent required for murder.") (quotation marks omitted).[4]

Next, defendant presents several arguments in a Standard 4 brief, none of which warrants reversal. First, defendant claims that trial counsel was ineffective for failing to inform defendant that she could consult an expert witness and for failing to properly investigate whether to employ an expert witness. Specifically, defendant contends that an expert witness could have provided testimony disputing the allegations that the Impala was capable of inflicting the existing damage to the C-Max and that the injury to Sealie's knee was not caused by her fall during the first altercation. Defendant's argument is comprised of pure speculation and conjecture, offering nothing of substance nor identifying any expert who could support her claims. In *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009), this Court stated:

> In addition, we note that irrespective of whether defense counsels' decision concerning whether to retain independent experts was proper trial strategy, defendant has merely speculated that an independent expert could have provided favorable testimony. In other words, defendant has failed to show that the retention of an independent expert would have altered the outcome of the lower court proceedings.

The same can be said here; therefore, we reject defendant's argument.

Defendant next maintains that there were inconsistencies between Marion's and Sealie's testimony and that Sealie had also made earlier statements that were inconsistent with her testimony. Defendant contends that trial counsel was ineffective for failing to impeach Marion and Sealie with the inconsistent statements during his cross-examination of those individuals. Defendant recounts testimony by Sealie in which she indicated that she went inside Marion's apartment to retrieve the keys to the Charger just before the second altercation. Defendant then cites testimony by Sealie that acknowledged that she apparently told police that she saw defendant throwing bricks at her Charger when Sealie arrived at the apartment complex. Sealie claimed at trial, however, that she did not observe defendant throwing bricks but only that Marion had told her over the phone that defendant had done so. We note that it was *defense counsel* who elicited the testimony about the contradiction between Sealie's police statement and her trial testimony. Defendant proceeds to blend different pages of the trial transcript together and out of order to make it appear that Sealie gave two different accounts regarding which car keys she sought when going into Marion's apartment after the first altercation. Read properly, the transcript reveals that Sealie went into the apartment to obtain the keys to the Dodge Charger after the first altercation and then

---

[4] The same analysis would apply had defendant argued the defense of accident with respect to the charge of felonious assault, considering that felonious assault requires proof of an intent to injure a victim or to make the victim reasonably fear an immediate battery. M Crim JI 17.9(3).

-6-

sought her keys to the C-Max after the second altercation in an effort to leave the parking lot. Defendant has established neither deficient performance nor prejudice. And we also note that the record reflected that trial counsel engaged in appropriately aggressive cross-examination of both Marion and Sealie.

Defendant next argues in her Standard 4 brief that trial counsel was ineffective for agreeing to the trial court's decision to strike Juror 10 for cause. Defendant relies on the language in MCR 2.511, which concerns the process of impaneling a jury. According to defendant, her family and friends spoke to Juror 10 after his discharge and he communicated to them that he would have found defendant "not guilty." Defendant argues, therefore, that the dismissal of Juror 10 affected the outcome of the trial. This argument lacks merit.

At the start of the last day of trial proceedings, at which time the proofs were all in and closing arguments had been made, the court noted that it was almost 11:00 a.m., and everyone was waiting for Juror 10 who was late and had been tardy on previous days. The court observed that Juror 10's work schedule was apparently creating difficulties and that the trial "must be a hardship for him." The court, acting sua sponte, decided to strike and discharge Juror 10 as a matter of "efficiency." Fourteen jurors had initially been selected, and the court indicated that they would proceed with 13 jurors, one of whom would be later designated as the alternate. After the trial court finished instructing the jury, the court noted that lots had been drawn and that Juror 6 would be considered the alternate.[5]

Defendant focuses entirely on MCR 2.511, but this provision concerns impaneling a jury at the start of trial and is not relevant to the circumstances in this case. The trial court was empowered to remove Juror 10 under MCL 768.18, which provides, in relevant part, that "[s]hould any condition arise during the trial of the cause which in the opinion of the trial court justifies the excusal of any of the jurors so impaneled from further service, he may do so and the trial shall proceed . . . ." The trial court did not abuse its discretion by discharging Juror 10. *People v Tate*, 244 Mich App 553, 562; 624 NW2d 524 (2001) ("[W]hile a defendant has a fundamental interest in retaining the composition of the jury as originally chosen, he has an equally fundamental right to have a fair and impartial jury made up of persons able and willing to cooperate, a right that is protected by removing a juror unable or unwilling to cooperate."). And counsel was not ineffective for failing to raise a futile or meritless objection. *Snider*, 239 Mich App at 425. Juror 10's

---

[5] To the extent that defendant asserts that this drawing did not occur or was not done properly, the record belies her claim. The trial court complied with MCR 6.411, which provides, in pertinent part:

> The court may impanel more than 12 jurors. If more than the number of jurors required to decide the case are left on the jury before deliberations are to begin, the names of the jurors must be placed in a container and names drawn from it to reduce the number of jurors to the number required to decide the case.

purported discussion with defendant's family members and friends has no relevancy and finds no support in the record. Also irrelevant are defendant's contentions that Juror 10 had contacted the court to ensure the court that he was on his way and that a deputy suspected that Juror 10 was in the court building because Juror 10's phone was turned off. The bottom line is that Juror 10 was quite late and had been tardy previously.[6] Again, there was no abuse of discretion. See *People v Bell*, 74 Mich App 270, 274; 253 NW2d 726 (1977) (no abuse of discretion occurred when court excused and discharged a juror where "[t]he transcript discloses that the juror absented herself and was not present").

Finally, defendant argues in her Standard 4 brief that the trial court abused its discretion by refusing to admit evidence of an audio recording of a telephone conversation between Marion and defendant that allegedly occurred between the first and second altercations.[7] Specifically, defendant contends that the prosecution's introduction of evidence regarding defendant's character, MRE 404(a), and prior acts, MRE 404(b), entitled defendant to enter the audio recording into evidence for purposes of rebuttal under MRE 404. The premise of defendant's argument is misplaced. First, contrary to defendant's argument, testimony of defendant's demeanor at the time of the altercations was not character evidence under MRE 404(a). MRE 404(a) was simply not implicated. Second, contrary to defendant's argument, Marion's testimony that defendant threatened to strike and then smacked the Charger's windshield with keys was not admitted to show propensity. It was admitted to merely show the circumstances leading up to the felonious assault and MDOP, thereby providing context. See *People v Denson*, 500 Mich 385, 397; 902 NW2d 306 (2017).[8] The evidence could also be viewed as showing defendant's "intent" to damage property. MRE 404(b)(1).

Furthermore, in response to questioning by the trial court, defense counsel stated that the intent behind the introduction of the audio recording was to rebut Marion's contention that defendant threatened to key the Charger and hit her car keys on the front windshield. Defense counsel maintained that because the audio recording did not include any discussion of defendant's

---

[6] Defendant additionally contends that the trial court erred by violating the language in MCR 2.513(B), which provides that "[t]he court must ensure that all communications pertaining to the case between the court and the jury or any juror are made a part of the record." Defendant correctly states that the information regarding Juror 10's phone call and the deputy's comments was not placed on the record. Assuming these events occurred, no prejudice has been demonstrated that would warrant a new trial. *People v Powell*, 303 Mich App 271, 275-276; 842 NW2d 538 (2013).

[7] In *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017), our Supreme Court stated:

> A trial court's decision to admit evidence will not be disturbed absent an abuse of discretion. But whether a rule or statute precludes admission of evidence is a preliminary question of law that this Court reviews de novo. A trial court necessarily abuses its discretion when it admits evidence that is inadmissible as a matter of law. [Citations omitted.]

[8] We are proceeding on the assumption that the threat and act constituted evidence of "other" acts under MRE 404(b).

alleged threats to key the Charger, the audio conversation could be introduced as rebuttal evidence to Marion's testimony. This was not rebuttal character evidence admissible under MRE 404, which is how defendant frames this issue. The trial court denied defendant's request to admit the audio recording as rebuttal because the absence of any discussion of the alleged threat did not mean that the threat did not occur. We hold that the court did not abuse its discretion in precluding the admission of the audio recording. And even if the court erred in its ruling, defendant has not demonstrated that the error was outcome determinative or that a miscarriage of justice would occur absent reversal. MCL 769.26; *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

We affirm.


/s/ Jonathan Tukel
/s/ Jane E. Markey
/s/ Brock A. Swartzle