PEOPLE v MROUE

Docket No. 51722. Submitted November 12, 1981, at Detroit.—Decided December 15, 1981.

Faissal Y. Mroue was convicted by a jury in Wayne Circuit Court of voluntary manslaughter and possession of a firearm during the commission of a felony. He was given a suspended sentence on the manslaughter conviction and was sentenced to the statutorily mandated two-year term for the felony-firearm conviction, Myron H. Wahls, J. Defendant appeals. *Held:*

The trial court erred by failing to instruct the jury that defendant had no duty to retreat from attack since he was in his own home and by omitting from supplemental jury instructions on voluntary manslaughter the phrase "without justification or excuse".

Reversed and remanded for a new trial.

1. HOMICIDE — DEFENSES — SELF-DEFENSE — DEADLY FORCE — RETREAT.

The general rule is that a person must retreat if retreat is safely possible before he may exercise deadly force to repel an attack.

2. HOMICIDE — DEFENSES — SELF-DEFENSE — RETREAT — HOME.

A person has no duty to retreat before defending himself if attacked in his own home if he has a right to be there.

3. HOMICIDE — DEFENSES — SELF-DEFENSE — RETREAT.

A victim of an attack has no duty to retreat before defending

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide §§ 162, 163.
[2, 3, 5] 40 Am Jur 2d, Homicide § 167.
   Extent of premises which may be defended without retreat under right of self-defense. 52 ALR2d 1458.
[4] 40 Am Jur 2d, Homicide § 525.
[6] 40 Am Jur 2d, Homicide §§ 56, 145, 146.
[7] 40 Am Jur 2d, Homicide §§ 1, 54, 110.
[8, 9] 40 Am Jur 2d, Homicide § 56 *et seq.*
[10, 11] 5 Am Jur 2d, Appeal and Error § 813.
   75 Am Jur 2d, Trial §§ 623, 624.
[11] 75 Am Jur 2d, Trial §§ 919-923.

himself when attacked in his own home, and the fact that the attacker has an equal right to be in the home does not change the rule.

4. Homicide — Voluntary Manslaughter — Jury Instructions — Error.

It was error for a trial court in a murder trial to omit the phrase "without justification or excuse" from a supplemental jury instruction describing voluntary manslaughter as a lesser-included offense of second-degree murder where the supplemental instruction was given the day after the jury was first excused to deliberate and without the benefit of additional instructions included in the original instructions which would apprise the jury of the fact that certain homicides are not murder.

5. Homicide — Defenses — Self-Defense — Retreat — Home.

Self-defense in a home is established by showing two elements: (1) that the defendant was not the aggressor, and (2) that the defendant acted in fear of imminent danger or fear of losing his life or suffering grievous bodily harm.

6. Homicide — Voluntary Manslaughter — Defenses — Self-Defense.

Self-defense can be a defense to a charge of voluntary manslaughter.

7. Homicide — Excusable Homicide — Manslaughter.

Excusable homicide occurs where it is reasonably necessary for a defendant to kill his assailant to save his own life or protect himself from great bodily harm; manslaughter occurs where a defendant has no reason to believe that he is acting to save his own life or to protect himself from great bodily harm but, rather, kills under a lesser degree of fear, in a state of excitement or confusion of the mind.

8. Homicide — Manslaughter.

Voluntary manslaughter, like involuntary manslaughter, is the killing of another without justification.

9. Homicide — Voluntary Manslaughter.

Voluntary manslaughter occurs when a killing that would otherwise be murder takes place when the defendant is in a state of passion, and as a result of that passion.

10. Appeal — Jury Instructions — Error.

The Court of Appeals must find that a trial court committed error requiring reversal where the court gave supplemental

jury instructions which were confusing or erroneous and the defense attorney properly objected to the supplemental instructions.

11. TRIAL — JURY INSTRUCTIONS — SUPPLEMENTAL INSTRUCTIONS.
    A trial court, as a general rule, need reinstruct only on that portion of the jury instructions which the jury requests where the supplemental instructions are not misleading; however, error requiring reversal may occur where the supplemental instructions cannot be properly understood without additional instructions which were included in the original instructions and the court fails to reinstruct on the additional instructions.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *A. George Best, II,* Assistant Prosecuting Attorney, for the people.

*Edward A. Khoury (Carl Ziemba,* of counsel), for defendant on appeal.

Before: M. F. CAVANAGH, P.J., and ALLEN and MACKENZIE, JJ.

ALLEN, J. Defendant was convicted after a jury trial of voluntary manslaughter, MCL 750.321; MSA 28.553, and possession of a firearm in the commission of a felony, MCL 750.227b; MSA 28.424(2). He was sentenced May 21, 1980, to a suspended sentence for manslaughter and to the statutorily mandated two-year term for the felony-firearm conviction. He appeals by right, raising three issues, two of which require reversal and a remand for a new trial. Each of these issues involves the court's instructions on self-defense.

The charge against the defendant arose from an incident on July 30, 1979, during which the defendant, who was 18 years old at the time, shot and killed his father in the living room of their home.

Defendant was charged with second-degree murder and was bound over on that charge.

At trial, several family members testified that the father had been a strict and violent man who kept the family in a constant state of fear. Defendant's older brother, Fauzi, testified that their father carried a gun at all times and had been treated for a mental disturbance. He said that the father often beat his sons, older daughters and wife, and had threatened the family with the gun. The defendant's mother also described her husband's violent temper and history of psychiatric problems. Similar testimony was elicited from two other children and from two psychiatrists who had treated the deceased. The defendant also described his father's tantrums, and said that his father had told him that he had killed six men in Brazil and would kill others if they did not obey him.

Defendant's mother, testifying with her son Fauzi as an interpreter, said that on the morning of July 30, 1979, the deceased appeared extremely depressed and said he was going to "take my clothes and just go and kill people".

Fauzi, the mother and two of the children described the incidents of the night of the homicide. Fauzi said that his father was angry because the defendant arrived home late from work on the evening of July 30, 1979, and that when his brother arrived, the father ordered him to go to the basement and told Fauzi to stay upstairs or he "would get the first bullet". The brother said he heard the defendant pleading with his father and heard the father threaten to kill the mother and his sister. Fauzi said his father came up the stairs, beating the defendant; that the deceased then began beating the mother and that, while this was

occurring, defendant crawled to a china cabinet in the living room and returned with Fauzi's gun, which had been hidden there; that defendant fired two warning shots into the ceiling; that he saw the deceased point a gun at him and his mother, then pull back the hammer; that he thought that the deceased shot, and that defendant then shot the deceased; that the deceased staggered and fell onto a chair; that he (Fauzi) then took the gun from the defendant and kicked the gun from his father's hand. Fauzi testified that he took the gun fired by the defendant and went into the kitchen and that while he was there he heard more shots; that he returned to the living room and saw the defendant with the deceased's gun. The police arrived shortly thereafter.

The mother's testimony, as translated by Fauzi, parallelled that of Fauzi. She was impeached with a prior inconsistent statement she had given to the police, however, which indicated that she had run to the basement before any shots were fired. Defendant's two sisters, who had remained in the basement during the incident, said that the mother had run to the basement after the shooting.

Defendant took the stand in his own behalf and described the beating he had received and the beating he saw his father administering to his mother. He said that he pulled the gun and fired the warning shots, then fired at his father because he believed his father had pulled back the hammer on the gun. He said that he did not know who fired first, that all he saw was flashes. Defendant testified that after Fauzi took his revolver to the kitchen, the deceased began to "dig" for his gun, so he picked it up and fired. The defendant said that he fired the revolver because he believed that

if he did not, he and the rest of his family would be killed.

Two police officers described the arrest of the defendant. They said that when they arrived, neither the defendant nor his mother appeared to have been beaten.

The Wayne County Medical Examiner testified that the deceased suffered five gunshot wounds, three of which were made by bullets entering through the back.

The jury was instructed on defendant's theory of the case, which was that the defendant had acted in self-defense, and on the prosecution's theory, which was that the family members were covering up the true facts of the incident to protect the defendant and that the defendant had used excessive force to stop the beating.

The jury was instructed on second-degree murder, voluntary manslaughter and involuntary manslaughter as lesser-included offenses of second-degree murder, and reckless discharge of a firearm. They also were instructed on self-defense. The self-defense instruction, taken from CJI 7:9:02, stated in part:

"The law requires a person to avoid using deadly force if he can safely do so. If the defendant could have safely retreated but did not do so, the failure to retreat is a circumstance which you may consider, together with all other circumstances, in determining whether he went further in repelling the danger than he was justified in doing.

"However, if the defendant believed that he was in imminent danger of death or serious bodily harm and that deadly force was immediately necessary to repel such danger, he was not required to retreat or consider whether he could safely retreat. He was entitled to stand his ground and use such force as he believed immediately necessary to protect his person."

At the close of the instructions, the defense attorney objected to the court's failure to instruct that there is no duty to retreat in one's own home.

The day after the jury was first excused to deliberate, the jurors requested that the instructions on voluntary and involuntary manslaughter be reread. After receiving no objection from counsel, the court reread the instructions on the two crimes. After the jury was excused to resume deliberations, defense counsel objected to the omission of the phrase "without justification or excuse" in the instruction on voluntary manslaughter. The trial court indicated that self-defense was not generally available as a defense for voluntary manslaughter, so the phrase was not needed in the instruction.

After deliberating for approximately one additional hour, the jury found defendant guilty of voluntary manslaughter and of having violated the felony-firearm statute.

We have examined the instructions in their entirety and believe that the trial court erred reversibly by failing to instruct that there was no duty to retreat in the home and by omitting, in the supplemental instructions, the phrase "without justification or excuse".

Generally, a person must retreat if retreat is safely possible before he may exercise deadly force to repel an attack. *Pond v People,* 8 Mich 149, 175 (1860). Where, however, the person attacked is in his own home, where he has a right to be, there is no duty to retreat. *Pond,* 176, *People v Stallworth,* 364 Mich 528, 535; 111 NW2d 742 (1961). When both the attacker and the attacked have an equal right to be in the home, there is no duty to retreat. *People v Lenkevich,* 394 Mich 117, 120-121; 229 NW2d 298 (1975), *People v Garrett,* 82 Mich App 178, 180; 266 NW2d 458 (1978).

The instruction given in the case at bar was taken from CJI 7:9:02, which states in a cautionary use note: "Use CJI 7:9:03 [no duty to retreat] where the act occurred in the defendant's dwelling or within its curtilage. *Do not use this instruction.*" (Emphasis in original.) The giving of this instruction when the killing occurred in the home of the defendant has been held to be reversible error even absent an objection. *People v Paxton,* 47 Mich App 144, 146; 209 NW2d 251 (1973). Here, where the defendant's attorney did object in a timely fashion and where there was a jury question about the availability of the defense, we hold that reversible error occurred in giving the instruction on duty to retreat.

In *Paxton,* this Court held that two elements must be shown to establish the defense of self-defense in a home: (1) that the defendant was not the aggressor and (2) that the defendant was acting in fear of imminent danger or fear of losing his life or suffering serious bodily harm. *Paxton,* 147. On remand, the jury should be permitted to determine whether these elements have been disproved by the prosecution.

The second error requiring reversal occurred in the court's supplementary instructions defining voluntary manslaughter. The trial court read verbatim from CJI 16:4:02, which describes voluntary manslaughter as a lesser-included offense of second-degree murder. The instruction given states that murder may be reduced to manslaughter in certain circumstances. The defendant objected to the given instruction, arguing that it omitted the phrase "without justification or excuse". In arguments outside the presence of the jury, the trial judge expressed his belief that the defense of self-defense was inapplicable to voluntary manslaughter, a crime of passion.

Initially, we note that the trial judge was clearly wrong in his belief that a defendant acting in self-defense cannot assert that defense when charged with manslaughter. Justice CHRISTIANCY discussed the relationship between excusable (nonfelonious) homicide and manslaughter in *Hurd v People,* 25 Mich 405, 411 (1872), when he reasoned that excusable homicide occurs where it is reasonably necessary for a defendant to shoot his assailant to save his own life or protect himself from great bodily harm. Manslaughter occurs, however, where a defendant has no reason to so believe, but acts under a lesser degree of fear, in a state of excitement or confusion of the mind. Similarly, and more recently, the Supreme Court observed that voluntary manslaughter, like involuntary manslaughter, is the killing of another *without justification. People v Townes,* 391 Mich 578, 589; 218 NW2d 136 (1974).

We do not believe that the court's supplementary instructions in the case at bar were technically erroneous. It is true that voluntary manslaughter occurs when a killing that would otherwise be murder takes place when the defendant is in a state of passion, and as a result of that passion. When the voluntary manslaughter instruction immediately follows proper instructions on murder, a jury is apprised that certain homicides are not murder, but are instead excused due to the circumstances. Thus, when the standard jury instruction on voluntary manslaughter as a lesser-included offense of murder is given in the context of additional adequate instructions, there is little danger that any juror would be led astray by the failure to include the phrase "without justification or excuse" in the voluntary manslaughter instruction.

Where, however, the manslaughter instruction is given one day after the murder and self-defense instructions, and the voluntary manslaughter instruction is not supplemented with a definition of murder, there is a danger that a jury could find the defendant guilty of voluntary manslaughter even though it believed the defendant was acting in self-defense.

We conclude that while the instructions given were not technically erroneous, there was a great danger that the supplemental instructions, standing apart from the definition of murder and description of self-defense, were misleading.

In the instant case, the jury may have taken with it a proper knowledge of the defense of self-defense to a charge of voluntary manslaughter when it first entered the jury room. After the instructions a day later, however, this understanding is likely to have been negated. Where supplemental instructions are confusing or erroneous, and where the defense attorney has properly objected to the supplemental instructions, this Court must find reversible error. *Townes, supra,* 588.

In so holding, we do not discard the usual rule that a trial judge need give only that portion of the instructions that a jury requests. *People v Darwall,* 82 Mich App 652, 663; 267 NW2d 472 (1978). Where the supplemental instructions are not misleading, the general rule is correct. Where, however, the supplemental instructions cannot be properly understood without additional instructions that were included only in the original instructions, we believe there is a danger that a jury would be misled. Accordingly, we hold that the trial court erred in omitting the phrase "without justification or excuse" from the supplemental instruction on voluntary manslaughter.

As defendant's remaining allegation of error is not likely to, and certainly should not, recur on retrial, it need not be addressed in this opinion.

Reversed and remanded for a new trial.