PEOPLE v HIMMELEIN

Docket No. 88918. Submitted April 9, 1987, at Grand Rapids. Decided
June 6, 1989. Leave to appeal applied for.

Defendant, Scott W. Himmelein, was arrested by the Allegan City
Police Department on December 21, 1984, on the charge of
driving while under the influence of intoxicating liquor. A
substance which appeared to be marijuana was seized from
defendant and sent for laboratory analysis. In accordance with
normal operating procedures, no complaint was sworn and no
warrant was sought for a charge of possession of marijuana, the
issuance of a warrant to be deferred pending the laboratory
results. For reasons that remain inexplicable, defendant was
booked for possession of marijuana and posted bond for the
same offense in order to secure his release. After the laboratory
analysis confirmed the substance seized from defendant to be
marijuana, a warrant was sought through the prosecutor's
office for possession of marijuana. The sheriff's department
executed the warrant and defendant was rearrested on January
18, 1985. The officers participating in the decision to execute
the warrant and in the rearrest were unaware that defendant
had previously posted bond for possession of marijuana. The
fingerprint card obtained in the course of the rearrest was
thereafter forwarded to a detective in the sheriff's department
investigating a December 19, 1984, sexual attack. Defendant's
thumbprint was found to match a thumbprint obtained from a
yardstick used by the attacker. This was the only evidence
linking defendant to the crime. Defendant was thereafter tried
by a jury in Allegan Circuit Court, George R. Corsiglia, J., and
was convicted of first-degree criminal sexual conduct, unarmed
robbery, and the unlawful taking and driving away of a motor
vehicle. Defendant appealed, alleging several errors.

The Court of Appeals *held:*

1. The trial court properly denied defendant's motion to

REFERENCES

Am Jur 2d, Arrest §§ 4 *et seq*; Criminal Law §§ 598, 599; Evidence
§ 1144; Rape §§ 68.5, 88 *et seq*; Robbery §§ 24-27.
Fingerprints, palm prints, or bare footprints as evidence. 28 ALR2d
1115.

suppress evidence of the fingerprint card. The trial court did not clearly err in finding that the issuance of the warrant for possession of marijuana was proper and that its subsequent execution was inadvertently done without knowledge of the posting of bond for marijuana possession and without any attempt to circumvent defendant's rights. The rearrest of the defendant had a valid justification and was proper under the circumstances of this case.

2. The fingerprint evidence was sufficient for rational jurors to find that defendant's identity was proven beyond a reasonable doubt.

3. The evidence was sufficient to establish the personal injury element of first-degree criminal sexual conduct. There was sufficient evidence for the jury to conclude that mental anguish was proven beyond a reasonable doubt. There was sufficient evidence of bodily injury.

4. The evidence of a taking was sufficient. The evidence was sufficient to establish the requisite intent.

5. The defendant was not, as he contended, sentenced for armed robbery instead of unarmed robbery.

Affirmed.

WEAVER, P.J., concurred but wrote separately to note that the United States Supreme Court has adopted a good-faith exception to the exclusionary rule to be applied on a case-by-case basis and that she would not eliminate the possiblity of the good-faith exception applying in this case.

1. ARREST — REARREST — BAIL.

The discretion of the police to effect the rearrest of a defendant admitted to bail is limited by a requirement that there be a valid justification and purpose to be served by such rearrest; the continuing knowledge of the defendant's possible guilt of the offense charged in the indictment is not itself sufficient (US Const, Am IV).

2. EVIDENCE — CRIMINAL LAW — FINGERPRINTS.

The general rule is that fingerprint evidence alone is sufficient to establish identity if the prints are found at the scene of the crime under such circumstances that they could have only been made at the time of the commission of the crime.

3. RAPE — CRIMINAL SEXUAL CONDUCT — MENTAL ANGUISH.

Evidence of mental anguish is sufficient to establish the personal injury element of first-degree criminal sexual conduct if a rational trier of fact could find beyond a reasonable doubt that

the victim sustained extreme or excruciating pain, distress, or suffering of the mind (MCL 750.520b[1][f]; MSA 28.788[2][1][f]).

4. RAPE — CRIMINAL SEXUAL CONDUCT — BODILY INJURY.

Bodily injuries need not be permanent or substantial to support a conviction for first-degree criminal sexual conduct (MCL 750.520b[1][f]; MSA 28.788[2][1][f]).

5. ROBBERY — UNARMED ROBBERY — TAKING — INTENT.

Unarmed robbery is established where the victim complies with a demand for money out of a reasonable fear of injury which is based upon a prior act of violence by the defendant; where a robbery is based on the victim's being put in fear of injury because of a prior act of violence by the defendant, the larcenous intent need not exist at the time of the prior forceful act but rather it need only exist at the time of the taking of the property while the victim is in fear of injury (MCL 750.530; MSA 28.798).

6. CRIMINAL LAW — SENTENCING — JUVENILE ADJUDICATIONS.

An uncounseled prior juvenile adjudication is neither per se invalid nor necessarily beyond the scope of consideration of a sentencing judge.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Fred R. Hunter, III,* Prosecuting Attorney, and *J. Ronald Kaplansky,* Assistant Attorney General, for the people.

State Appellate Defender (by *F. Michael Schuck*), for defendant on appeal.

Before: WEAVER, P.J., and HOLBROOK, JR., and T. GILLESPIE,* JJ.

HOLBROOK, JR., J. Defendant was tried by a jury and convicted of first-degree criminal sexual conduct, MCL 750.520b(1)(f); MSA 28.788(2)(1)(f), unarmed robbery, MCL 750.530; MSA 28.798, and the unlawful taking and driving away of a motor vehicle, MCL 750.413; MSA 28.645. Defendant was sentenced to concurrent prison terms of twenty to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

forty years for the first-degree criminal sexual conduct conviction, ten to fifteen years for the unarmed robbery conviction, and three to five years for the unlawful driving conviction. We affirm.

This case arose from an incident on December 19, 1984. The prosecution's evidence at trial showed that a man alleged to be defendant entered the victim's home and engaged the victim in nonconsensual sexual intercourse. At one point during the attack, the man struck the victim with a yardstick. Throughout the incident, the man, who initially concealed his face with a stocking mask, took efforts to avoid letting the victim look at him. Consequently, the victim was unable to identify her attacker, even though she was acquainted with defendant. After the attack, the man took $9 from the victim's purse and ascertained from the victim where her car keys were located. The man then left the scene in her automobile.

During the police investigation, the yardstick was checked for fingerprints. A print taken from the yardstick matched defendant's thumbprint shown on a fingerprint card obtained from the sheriff's department. This was the only evidence linking defendant to the crime.

Defendant now argues that the trial court erred by denying his motion to suppress evidence of the fingerprint card used to identify the thumbprint discovered at the scene of the crime. Defendant's argument is twofold: (1) the evidence should have been suppressed because it was taken in violation of the interim bail statute, MCL 780.581 *et seq.*; MSA 28.872(1) *et seq.*, and (2) the card was taken pursuant to an illegal arrest in violation of defendant's Fourth Amendment rights. See also Const 1963, art 1, § 11. Defendant's first argument—that

the failure to inform defendant of his right to post interim bail resulted in the unlawful taking of his fingerprints—is not well taken because defendant failed to raise this issue in the trial court. Thus, no record on this question was preserved for appeal. We turn now to the question of whether the arrest which resulted in the securing of the fingerprint card was illegal.

At the evidentiary hearing on the suppression motion, it was established that defendant was arrested by the Allegan City Police Department on December 21, 1984, some two days after the crimes at issue in this appeal were committed. The arrest was made on the charge of driving while under the influence of intoxicating liquor. At that time, a substance similar in appearance to marijuana was seized from defendant and forwarded to the state laboratory for analysis. In accordance with normal operating procedures, no complaint was sworn and no warrant was sought for the charge of possession of marijuana, the issuance of a warrant to be deferred pending the results of the laboratory analysis. For reasons that remain inexplicable, defendant was booked for possession of marijuana and posted bond for the same offense in order to secure his release after the December 21 arrest.

Once the city police received the laboratory analysis report confirming that the substance seized from defendant was marijuana, a warrant was sought through the prosecutor's office for possession of marijuana. The police were aware of defendant's previous arrest on the DUIL charge, but it was believed that a rearrest was consistent with proper procedure. The warrant was delivered to the sheriff's department for execution. Defendant was rearrested on January 18, 1985. The trial court found that the officers participating in the decision to execute the warrant and in the rear-

rest were unaware that defendant had previously posted bond for possession of marijuana.

The fingerprint card obtained in the course of the rearrest procedure was forwarded to the detective in the sheriff's department investigating the December 19 sexual attack. Defendant was one of some twenty persons suspected of the attack, apparently because he lived near the victim. Defendant's fingerprints, in addition to some ten to fifteen other sets, were submitted to a crime laboratory in an attempt to find a match with the print taken from the yardstick at the scene of the crime.

The trial court denied the motion to suppress, finding that the issuance of the warrant for possession of marijuana was proper and that its subsequent execution was inadvertently done without knowledge of the posting of bond and without any attempt to circumvent defendant's rights. Since we conclude that these findings are not clearly erroneous, see *People v Burrell,* 417 Mich 439, 448-449; 339 NW2d 403 (1983), defendant's contention that the rearrest was only a pretext to obtain his fingerprints is without merit.

Defendant contends that the rearrest was illegal under the "collective knowledge" or "fellow officer" rule because the police should be charged with the knowledge that defendant had previously complied with bail requirements, thus vitiating probable cause for the rearrest. In *Whiteley v Warden, Wyoming State Penitentiary,* 401 US 560; 91 S Ct 1031; 28 L Ed 2d 306 (1971), it was acknowledged that a police officer is entitled to rely on the representations of his fellow officers in the determination of whether there is probable cause to effect an arrest. However, the collective knowledge rule requires suppression of evidence seized pursuant to the arresting officer's good-faith

reliance on false information, which, if known, would render the arrest illegal for lack of probable cause. In other words, the arresting officer can effect no better arrest than those fellow officers having firsthand knowledge of the facts asserted to amount to probable cause. Cf. *People v Bell,* 74 Mich App 270, 275-277; 253 NW2d 726 (1977). Although *Whiteley* is based on the Fourth Amendment, the same result has been reached by applying a due process analysis. See *United States v Mackey,* 387 F Supp 1121 (D Nev, 1975).

We do not find the collective knowledge rule to be dispositive. The underlying purpose of that rule is to deter the police from passing on false information, even when the resultant erroneous arrest is made in good faith. We question whether any purpose would be served by an application of a rule that deters the police from effecting arrests without first checking whether a bond had previously been posted for the arrest offense. More importantly, the collective knowledge rule assumes that the arrest itself was illegal due to a state of affairs unknown to the arresting officer. The crucial question, then, is to what extent, if any, the Fourth Amendment operates as a limitation on the power of law enforcement authorities to execute a warrant resulting in the rearrest under the circumstances presented by this case, i.e., was the rearrest in fact illegal? The existence of probable cause for the arrest is not at issue here, given the results of the laboratory analysis on the marijuana seized from defendant.

Generally, the common-law rule is that a warrant gives the police no right to effect additional arrests once it is executed, although this rule is not without exceptions. *Carlson v Landon,* 342 US 524, 546-547; 72 S Ct 525, 537-538; 96 L Ed 547, 564 (1952). This Court has previously held that a

rearrest does not per se violate a defendant's due process rights. *People v Dunlap,* 82 Mich App 171, 176-177; 266 NW2d 637 (1978); *People v Watts,* 149 Mich App 502, 508-511; 386 NW2d 565 (1986), lv den 425 Mich 885 (1986). However, we are unaware of any decisions rendered by this Court or our Supreme Court requiring suppression of evidence because of an illegal rearrest.

We think that the limitations of the Fourth Amendment on the discretion of the police to effect a rearrest were correctly set forth in *United States v Holmes,* 452 F2d 249, 260-261 (CA 7, 1971), cert den 407 US 909; 92 S Ct 2433; 32 L Ed 2d 683 (1972). There the defendant Oliver was one of five named in an original indictment for federal narcotics violations. After his arrest, defendant posted bond and was released. Later a superseding indictment was issued, which named additional codefendants. Although no new warrant was issued for the defendant, the defendant was inadvertently rearrested and $6,029 was seized from his person incident to the rearrest. The court held that the cash should have been suppressed:

> Not only must there be reason to believe that a prospective arrestee is guilty of a crime; in addition, there must be some purpose to be served by making an arrest. During the entire period between March and October 18, 1967, probable cause to believe that Oliver had committed an offense continued to exist because he was under indictment. But since he had been admitted to bail, no purpose could have been served by continually rearresting him. Although at large, in contemplation of the law he remained in custody. In historic terms, he was the prisoner of his bail.
>
> The return of the second indictment justified a review of his custodial status. Additional charges might have made a rearrest proper, to be followed either by termination of bail or a modification of

its conditions. In Oliver's case, however, when the second indictment was returned, the judge ordered no change in his custodial status. The subsequent arrest, therefore, had no greater purpose than if there had been no second indictment.

We recognize that a variety of valid causes for a rearrest of a person admitted to bail may exist, see *Carlson v Landon,* 342 US 524, 546-547; 72 S Ct 525; 96 L Ed 547 [1952], but certainly the continuing knowledge of his possible guilt of the offense charged in the indictment is not itself sufficient; otherwise, harassment by continual rearrests could be justified by the continuing existence of "probable cause." The Fourth Amendment requires both a reasonable foundation for a charge of crime and also the avoidance of "rash and unreasonable interferences with privacy." Since there was no valid justification of Oliver's arrest, we conclude that the search of his person on October 18, 1967, was prohibited by the Fourth Amendment, and the seized cash was inadmissible.

The court added that the question of good faith or bad faith on the part of the arresting officers played no part in its holding. *Id.,* 261.

Applying the *Holmes* test requiring a valid justification for a rearrest, we find that the rearrest effected here was proper. The purpose of the December 21 arrest was limited to the DUIL charge, as is indicated by the decision not to file a complaint or seek a warrant for possession of marijuana unless and until laboratory analysis determined that the substance seized was, in fact, marijuana. The inadvertent nature of the booking and posting of bond for the offense of possession of marijuana immediately following the December 21 arrest did not alter the scope of arrest to encompass any offenses in addition to the DUIL charge. Therefore, the posting of bond was unauthorized in the absence of any indication that the police in-

tended to institute a formal charge for possession of marijuana against defendant as of that time. As such, the bond was a legal nullity, lacking any force to secure defendant's appearance to defend against the charge of possession of marijuana. This is made clear in *In re Mead,* 220 Mich 480; 190 NW 235 (1922), where the police refused to obey an order of the Recorder's Court to release a detainee on a "suspicion bond." The Supreme Court reversed an adjudication of contempt on the ground that the order was void for want of jurisdiction: "The matter was not in recorder's court. There was neither complaint, warrant, nor arrest thereon. . . . The order being a mere nullity, the police officer was under no duty to obey it." *Id.,* 483. See also *Clute v Ionia Circuit Judge,* 131 Mich 203; 91 NW 159 (1902).[1] Since defendant was under no legal compulsion from the unauthorized bond, the January 18 rearrest, effected in response to the command of a warrant, served the valid purposes of placing defendant on notice of his prosecution for possession of marijuana and of securing his appearance to defend the same. See MCL 764.1b; MSA 28.860(2). Accordingly, we affirm the decision of the trial court not to suppress because we find that the rearrest was valid under the circumstances of this case. Evidence seized pursuant to the rearrest was not subject to suppression.

Defendant next argues that the evidence of the fingerprint on the yardstick was insufficient to establish his identity as the perpetrator of the crimes committed on December 19, 1984. The gen-

[1] Although we recognize that the interim bail statute, MCL 780.581 *et seq.*; MSA 28.872(1) *et seq.*, contemplates that an arrestee may post bond in some circumstances prior to the formal issuance of a warrant, we believe that it is implicit in the statute that the arrest be effected for the purpose of commencing a criminal prosecution on the arrest offense. The arrestee is thereby placed on notice that he must defend against a criminal prosecution, and his appearance for the prosecution is secured. In this sense, the bond is authorized.

eral rule is that fingerprint evidence alone is sufficient to establish identity if the prints are found at the scene of the crime under such circumstances that they could have only been made at the time of the commission of the crime. *People v Ware,* 12 Mich App 512, 515; 163 NW2d 250 (1968); *People v Willis,* 60 Mich App 154, 158-159; 230 NW2d 353 (1975). The prosecutor's evidence showed that the yardstick used to strike the victim was kept in the victim's home and had been used as a toy by the victim's daughter since November or December of 1984. Although defendant, an acquaintance of the victim's husband, had been inside the home on one occasion about February of 1983, more than 1½ years prior to the attack, he had no more recent opportunity to gain access to the yardstick. An expert testified that latent prints are fragile and would not survive constant handling by others. We conclude that this evidence, viewed in a light most favorable to the prosecutor, was sufficient for rational jurors to find that defendant's identity was proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), cert den sub nom *Michigan v Hampton,* 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980).

Defendant argues that admission of fingerprint evidence on the basis of five points of comparison was erroneous and further urges this Court to adopt the standard of ten to twelve points of comparison as a foundation requirement. However, the court reporter subsequently filed an affidavit indicating that the testimony had actually been that there were at least fifteen points of comparison and that the transcript had indicated five points due to a transcription error. This obviates the need for us to address this issue. See MCR 7.216(A)(4).

Defendant argues that the evidence was insufficient to establish the personal injury element of first-degree criminal sexual conduct. The element of personal injury may be satisfied by a showing of either bodily injury or mental anguish. MCL 750.520a(j); MSA 28.788(1)(j). Since defendant contends that the trial court erred by not granting a directed verdict, we must determine whether the evidence presented by the prosecutor, viewed in a light most favorable to her, was sufficient for a rational jury to find the element of personal injury proven beyond a reasonable doubt. *Hampton, supra.*

Evidence of mental anguish is sufficient if a rational trier of fact could find beyond a reasonable doubt that the victim sustained extreme or excruciating pain, distress, or suffering of the mind. *People v Petrella,* 424 Mich 221, 270-275; 380 NW2d 11 (1985). In this case, the victim was subjected to several sexual penetrations, the last with her hands taped behind her and her eyes taped shut. During this incident, the victim's three-year-old daughter was placed in a nearby closet, where she remained, crying. Under these circumstances, it is difficult to question the victim's testimony that she was terrified and frightened. After the perpetrator left, the victim telephoned her husband, who returned to find the victim and the daughter crying. An examining physician later observed that the victim was tense and reserved to the point that it was difficult to talk to her. The victim further testified that she would not stay at home by herself for several months following the incident. The Court in *Petrella, supra,* pp 270-271, set forth a nonexhaustive listing of factors that would support a finding of mental anguish. We find several implicated here— "[t]estimony that the victim was upset, crying [or]

sobbing . . . during or after the assault," "[s]ome interference with the victim's ability to conduct a normal life," "[f]ear for the . . . safety . . . of those near to her," "[e]vidence that the emotional or psychological effects of the assault were long-lasting," and "[a] lingering fear, anxiety, or apprehension about being in vulnerable situations in which the victim may be subject to another attack." Although we do not find the evidence of mental anguish overwhelming, we do find that it was sufficient for the jury to conclude that mental anguish was proven beyond a reasonable doubt.

With respect to the question of bodily injury, the evidence showed that the victim sustained bruises, welts, or other marks to her hands, wrists, shoulder, groin and buttocks. Although these injuries were apparently not serious, this Court has previously held that bodily injuries need not be permanent or substantial. *People v Jenkins,* 121 Mich App 195, 198; 328 NW2d 403 (1982). See also *People v Hollis,* 96 Mich App 333, 337-338; 292 NW2d 538 (1980). We decline defendant's invitation to announce a new standard for evaluating the severity of bodily injury that would be analogous to the standard of "extreme or excruciating pain, distress, or suffering of the mind" set forth in *Petrella, supra,* p 257. The *Petrella* holding recognized and resolved the inherent ambiguity of mental anguish as an aggravating factor elevating criminal sexual conduct from the third to the first degree. Some degree of emotional distress is an almost inevitable concomitant of sexual assault. The definition of mental anguish in *Petrella* was necessary to clearly define that degree of emotional distress amounting to a showing of mental anguish. Bodily injury, viewed as an aggravating factor, does not share in this inherent ambiguity. Given the absence of any statutory indication of a

more stringent standard than that previously applied by this Court, we find the present standard for bodily injury to correctly reflect the legislative judgment that evidence of even insubstantial physical injuries is sufficient to support a conviction for criminal sexual conduct in the first degree.

Defendant argues that the trial court erred in its instruction to the jury on the mental anguish showing for the personal injury element. Defendant did not object at trial. In *Petrella, supra,* pp 276-278, the Court confronted a claim of instructional error to an identical instruction, which adhered to a former version of CJI 20:2:11(5), and decided that the failure to object precludes appellate review, absent manifest injustice. Since we are not persuaded that any manifest injustice occurred here, we decline to further address the claimed instructional error. See also *People v Swinford,* 150 Mich App 507, 514-515; 389 NW2d 462 (1986), lv den 426 Mich 861 (1986). We also reject defendant's alternative contention that the failure of the defense attorney to object was a serious mistake amounting to the ineffective assistance of counsel. The given instruction followed the version of the Criminal Jury Instructions in effect at that time. Although the instruction was disavowed in *Petrella,* that case was not decided until after the trial in the instant case. The defense attorney's failure to object here cannot be attributed to deficient legal representation.

Defendant next argues that the trial court erred by not directing a verdict on the charge of unarmed robbery on the ground of the insufficiency of the evidence. The elements of unarmed robbery are: (1) the felonious taking of property that may be the subject of a larceny from the person or presence of the victim, (2) by force and violence, assault, or putting in fear, (3) while not armed

with a dangerous weapon. *People v Spry,* 74 Mich
App 584, 594; 254 NW2d 782 (1977), lv den 401
Mich 825 (1977); *People v Denny,* 114 Mich App
320, 323-324; 319 NW2d 574 (1982), lv den 417
Mich 860 (1983). Case law makes clear that the
defendant must have an intent to rob at a time
contemporaneous with the application of force or
violence or the conduct placing the victim in fear.
*People v LeFlore,* 96 Mich App 557, 560-563; 293
NW2d 628 (1980), lv den 409 Mich 927 (1980).
Defendant's specific contention is that the evidence
was not sufficient to show either an actual taking
or a larcenous intent existing at the time of the
commission of the assaultive behavior directed
toward the victim. We disagree in both respects.

The victim's testimony provided sufficient evi-
dence of a taking. After the completion of the
sexual acts forced upon the victim, the perpetrator
left the victim's presence and returned a few
minutes later to ask whether $9 was all that she
had. The victim testified that she knew from that
question that he had looked into her purse. She
also knew that the purse contained $9 as of the
previous night. She further testified that she gave
no one permission to take her money. Later, a
police officer testified, identifying a picture of the
purse and stating that a billfold inside the purse
was found to be empty. Although our task would
perhaps be easier if the prosecutor had asked the
obvious question of the victim ("Was the $9 in the
purse missing after the attack?"), it seems appar-
ent that the witnesses intended to convey that a
taking did occur. Since a finding that the money
was taken requires only the most minimal infer-
ence from the facts already established, we con-
clude that the evidence of a taking was sufficient
under the *Hampton* standard.

The question of whether the evidence was suffi-

cient to show a larcenous intent contemporaneous with the commission of the sexual attack is answered by the similar case of *People v Hearn,* 159 Mich App 275, 278-282; 406 NW2d 211 (1987). There another panel of this Court addressed "situations where . . . a victim surrenders property upon demand without protest or struggle after the person making the demand has subjected the victim to violence or threats of violence," *id.,* p 282, and held:

> It is evident from the request itself that the person making such a demand is relying upon the continuing effect of the fear he or she has created to effect compliance. Regardless of whether the defendant had planned to commit larceny when he committed the act of violence or uttered a threat of violence, the fact remains that the defendant purposely used the fear already present to accomplish the larceny. In our opinion, such is sufficient to constitute unarmed robbery. . . . We hold that, when unarmed robbery is accomplished through fear, it is not necessary that the defendant have had a larcenous intent at the time the defendant committed the act which initially induced the fear. [*Id.*]

Since we agree with the panel deciding *Hearn,* we conclude that the evidence was sufficient to establish the requisite intent. See also *People v Wiley,* 112 Mich App 344; 315 NW2d 540 (1981). We also find no manifest injustice arising from alleged instructional errors pertaining to the elements of unarmed robbery, to which defendant did not object below. See *Hearn, supra,* p 278.

Defendant argues that resentencing is required because defendant was allegedly sentenced for armed robbery based on his conviction for the lesser offense of unarmed robbery. We disagree.

This is not a case where a defendant is sentenced on the court's finding that he committed an additional crime for which he was exonerated by the jury. The information charged defendant only with unarmed robbery. The judgment of sentence and the sentencing information report correctly reflect defendant's conviction for that offense. Nothing said at sentencing suggests that the court considered use of a weapon in the commission of the crimes. We conclude that the sentencing court's singular reference to "armed robbery," probably made out of inadvertence, does not demonstrate that defendant was sentenced for any offense other than those for which he was convicted.

Defendant finally argues that he was improperly sentenced on the basis of a presentence report that made reference to prior juvenile offenses for which he was not represented by counsel. However, an uncounseled prior juvenile adjudication is neither per se invalid nor necessarily beyond the scope of consideration of the sentencing judge. *People v Covington,* 144 Mich App 652, 654-655; 376 NW2d 178 (1985), remanded 425 Mich 853 (1986). Since defendant does not assert any specific reason why it was improper for the court to consider the juvenile adjudications, other than an asserted general impropriety in doing so, we find no error.

Affirmed.

T. GILLESPIE, J., concurred.

WEAVER, P.J. *(concurring).* I concur. However, *United States v Leon,* 468 US 897; 104 S Ct 3405; 82 L Ed 2d 677 (1984), adopted a good-faith exception to the exclusionary rule to be applied on a case-by-case basis. I would not eliminate the possibility of the good-faith exception applying in this case.