# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DONOVAN WAYNE FLUHART,

      Defendant-Appellant.

UNPUBLISHED
April 19, 2016

No. 325949
Emmet Circuit Court
LC No. 14-004041-FC

---

Before: TALBOT, C.J., and HOEKSTRA and SHAPIRO, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of two counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(f) (force or coercion causing personal injury), one count of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(f) (force or coercion causing personal injury), and one count of assault with intent to commit sexual penetration, MCL 750.520g(1). Defendant was sentenced as a habitual offender, second offense, MCL 769.10, to concurrent prison terms of 15 to 50 years for the two CSC I convictions, 7 to 22½ years for the CSC II conviction, and 3 to 15 years for the assault conviction. Defendant appeals as of right. For the reasons explained in this opinion, we affirm defendant's convictions, but remand with regard to his sentence pursuant to *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

In July of 2014, defendant and the victim spent the evening with some mutual friends in a trailer, drinking and smoking marijuana. At some point, the victim went to take a shower alone. After the others in the trailer left or had gone to sleep, defendant went into the bathroom uninvited and then sexually assaulted the victim. Sometime after defendant left, the victim called a friend to tell her about the incident, the victim went to the hospital where she underwent a sexual assault exam, and the assault was reported to the police.

When interviewed by the police, defendant admitted to a sexual encounter with the victim, but he maintained that the events were consensual. He asserted that there had perhaps been a "misunderstanding" or that the victim made the allegations because defendant "kind of treat[ed] her like a slut." At trial, defense counsel argued that the sex was consensual. The jury convicted defendant as noted above, and defendant now appeals as of right.

## I. SUFFICIENCY OF THE EVIDENCE

-1-

Defendant first argues that there was insufficient evidence to support his CSC I convictions. In particular, defendant asserts that the prosecutor failed to present sufficient evidence of "personal injury" to the victim, in the form of either physical injury or mental anguish, as required to maintain defendant's convictions under MCL 750.520b(1)(f). Regarding physical injury, defendant argues that the victim suffered no vaginal injuries and only some minor bruises and scratches, which the prosecution failed to connect to the sexual assaults. In terms of mental anguish, defendant concedes that the victim was crying and hysterical following the incident, but defendant argues that such a reaction is typical of a victim of sexual assault and insufficient to establish "mental anguish" within the meaning of MCL 750.520b(1)(f).

"A claim of insufficient evidence is reviewed de novo, in a light most favorable to the prosecution, to determine whether the evidence would justify a rational jury's finding that the defendant was guilty beyond a reasonable doubt." *People v McGhee*, 268 Mich App 600, 622; 709 NW2d 595 (2005). Circumstantial evidence and reasonable inferences therefrom are sufficient to establish the elements of a crime. *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010). "It is the jury's duty to determine the weight to be accorded any inferences," and this Court will "not interfere with the jury's assessment of the weight and credibility of witnesses or the evidence." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013).

Defendant was convicted under MCL 750.520b, which states, in pertinent part:

(1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

* * *

(f) The actor causes *personal injury* to the victim and force or coercion is used to accomplish sexual penetration. . . . [MCL 750.520b (emphasis added).]

"Personal injury" under the statute "means bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." MCL 750.520a(n). Bodily injury, mental anguish, and the other conditions "are merely different ways of defining the single element of personal injury" and "if the evidence of any one of the listed definitions is sufficient, then the element of personal injury has been proven." *People v Asevedo*, 217 Mich App 393, 397; 551 NW2d 478 (1996).

To constitute bodily injury, the physical injuries suffered "need not be permanent or substantial." *People v Mackle*, 241 Mich App 583, 596; 617 NW2d 339 (2000). For example, evidence that the victim sustained "bruises, welts, or other marks," even if not particularly serious, may be sufficient to support a conviction. *People v Himmelein*, 177 Mich App 365, 377-378; 442 NW2d 667 (1989). Bodily injury need not occur simultaneously with the sexual penetration, but there must be circumstances that connect the personal injury to the assault. See *Mackle*, 241 Mich App at 598-600.

In comparison, to prove mental anguish, "the prosecution is required to produce evidence from which a rational trier of fact could conclude, beyond a reasonable doubt, that the victim experienced extreme or excruciating pain, distress, or suffering of the mind." *People v Petrella*,

424 Mich 221, 259; 380 NW2d 11 (1985). In determining the existence of "mental anguish," a reviewing court may consider whether (1) the victim was upset, crying, sobbing, or hysterical during or after the assault; (2) the need for psychiatric or psychological care or treatment; (3) interference with the victim's ability to conduct a normal life, such as absence from the workplace; (4) fear for the victim's life or safety; (5) feelings of anger and humiliation; (6) use of prescription medication to treat anxiety, insomnia or other symptoms; (7) evidence that the emotional or psychological effects of the assault were long-lasting; (8) a lingering fear, anxiety, or apprehension about being in vulnerable situations; and (9) the fact that the assailant is the victim's natural father. *Id.*, at 270-271. The list is not exhaustive and no single factor listed above is necessary to a finding of mental anguish. *Id*.

In this case, the evidence was sufficient to establish both bodily injury and mental anguish. With respect to bodily injury, the victim testified that, as a result of the assault, she had bruises on her ankle, underneath her arm, by her collarbone, and on her left thigh. The sexual assault nurse examiner (SANE) testified that the victim had scratches in the middle and top of her back, a bruise on her right elbow, a bruise and abrasion on her right knee, and bruises on both shins. Pictures of many of these injuries, taken four days after the assault, were admitted into evidence. While it does not appear that any of the injuries were permanent or particularly serious, this evidence of the victim's injuries was sufficient to establish "bodily injury." See *Mackle*, 241 Mich App at 596; *Himmelein*, 177 Mich App at 377.

Insofar as defendant suggests that the victim's injuries could not be linked to the sexual assaults because the SANE nurse did not "date" the injuries and because there was testimony of the victim scratching herself on the way to the hospital, his argument is without merit. The victim's "scratching" would not explain her numerous bruises. And, in any event, the victim in fact testified that her injuries resulted from the sexual assaults. The credibility of this testimony was for the jury. *Dunigan*, 299 Mich App at 582. In sum, though her injuries were relatively minor, there was sufficient evidence to establish that the victim suffered bodily injury in connection with the sexual assaults perpetrated by defendant. See *Mackle*, 241 Mich App at 596.

Turning to "mental anguish," several of the *Petrella* factors are present and the evidence was sufficient to establish that the victim suffered mental anguish. For example, there was evidence from the victim and her friends that, after the assault, the victim was crying, screaming, and "freaking out" because of what happened. One friend testified that he could not even understand the victim at times because she was crying so hard. Another friend testified that the victim was "hysterical" and shaking on the way to the hospital, she was scratching and "itching at her skin as if she wanted to peel it off," and she had a "very weakened state of mind." The nurse who examined the victim testified that the victim was crying and mad at times during the evaluation. The victim also experienced feelings of anger and humiliation, testifying that she was "really disgusted" and angry that someone would do this to her. She explained that, after the attack, it took her a week to "feel . . . clean again." The victim also described being frightened during the attack, and there was evidence that these feelings of fear lingered after the attack. A friend testified that the victim had night terrors and, for months, she would "be afraid for

someone to even be close to her."[1] In addition, at the time of trial, the victim described the long-lasting effects of the attack, testifying that the assault "ruined the chance of [her] even having anything to do with a man again." Given this testimony, there was sufficient evidence presented from which a rational trier of fact could have found that the victim suffered "mental anguish." Overall, the evidence was sufficient to support defendant's CSC I convictions.

## II. PEOPLE V LOCKRIDGE

Next, defendant argues that judicial fact-finding, with respect to offense variables (OV) 3 (bodily injury) and 4 (serious psychological injury), mandatorily increased his minimum sentence range under the sentencing guidelines. Given that the trial court sentenced defendant within the resulting range, defendant requests a *Crosby*[2] remand in light of the recent Michigan Supreme Court decision in *Lockridge*. In contrast, the prosecutor argues on appeal that a remand is not warranted. According to the prosecutor, the jury's verdict supported the scoring of OVs 3 and 4 because, under MCL 750.520b(1)(f), the jury's verdict necessitated a finding of "personal injury," which includes "mental anguish" to justify the scoring of OV 4 and "bodily injury" to support the scoring of OV 3.

In *Lockridge*, the Court concluded that Michigan's legislative sentencing guidelines violate the Sixth Amendment right to a jury trial to the extent that the guidelines require judicial fact-finding in the scoring of the OVs and that judicial fact-finding mandatorily increases the floor of the guidelines minimum sentence range. *Lockridge*, 498 Mich at 364-365, 383, 388-389. To remedy this defect, the Court declared that, while courts must continue to consult the guidelines at sentencing, the guidelines are now "advisory only." *Lockridge*, 498 Mich at 391-392. Under *Lockridge*, an unpreserved claim, such as defendant's, is reviewed for plain error, and to warrant relief a defendant must make a "threshold showing of potential plain error" on appeal, which then entitles him to a *Crosby* remand to determine whether the defendant suffered prejudice. *Lockridge*, 498 Mich at 395, 398; *People v Stokes*, __ Mich App __, __; __ NW2d __ (2015) (Docket No. 321303), slip op at 11. In particular, to merit a *Crosby* remand, a defendant alleging a claim of unpreserved error must demonstrate: (1) that his "guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment," i.e., that his "OV level was calculated using facts beyond those found by the jury or admitted by the

---

[1] To the extent that defendant argues that the victim's mental anguish is the result, at least in part, of prior sexual assaults that the victim experienced, that argument is pure speculation and it was for the jury, having heard evidence of the victim's prior assaults, to determine whether defendant caused the victim's mental anguish. Additionally, we note that a defendant need not be the sole cause of a victim's injuries and one "takes his victim as he finds her," meaning that "any special susceptibility of the victim to the injury at issue" does not exonerate a defendant. *People v Brown*, 197 Mich App 448, 451-452; 495 NW2d 812 (1992) (finding that the defendant, who sexually assaulted the victim when he came upon her after she had been kidnapped and sexually assaulted by other men, was a cause of some part of the victim's personal injury, even if the precise amount of injury he inflicted could not be determined).

[2] *United States v Crosby*, 397 F3d 103 (CA 2 2005).

-4-

defendant and that a corresponding reduction in the defendant's OV score to account for the error would change the applicable guidelines minimum sentence range," and (2) that the defendant was not subject to an upward departure. *Lockridge*, 498 Mich at 394-395, 399.

In this case, for his most serious offense of CSC I, as a second offense habitual offender, defendant had a recommended minimum sentencing range of 108 to 225 months. See MCL 777.62; MCL 777.21(3)(a); MCL 777.16y. This range was based on defendant's total OV score of 40 points, which placed him in OV level III (40-59 points). Defendant's 40 point OV score included 5 points for OV 3 and 10 points for OV 4. The trial court sentenced defendant within the recommended sentencing range, imposing a sentence of 15 to 50 years' imprisonment.

Based on these facts, we conclude that defendant has made a threshold showing of possible prejudice entitling him to a *Crosby* remand under *Lockridge*. First, defendant was not subjected to an upward departure. Second, he has made a showing that judicial fact-finding with respect to OVs 3 and 4 affected his minimum sentence range under the legislative guidelines.

In this regard, OV 3 covers "physical injury to victim," and 5 points must be scored if "[b]odily injury not requiring medical treatment occurred to a victim." MCL 777.33(1)(e).[3] In comparison, OV 4 relates to "psychological injury to a victim," and 10 points must be scored if a "serious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The trial court scored OV 3 at 5 points and OV 4 at 10 points.

Assuming arguendo that jury findings of "bodily injury" and "mental anguish" for purposes of MCL 750.520b(1)(f) can be considered synonymous with "bodily injury" and "serious psychological injury" for purposes of scoring OV 3 and OV 4 respectively, it is nonetheless plain that, in this case, the trial court engaged in judicial fact-finding when scoring these variables. That is, as discussed, MCL 750.520b(1)(f) requires a finding of "personal injury," which may take a number of forms including both "bodily injury" and "mental anguish." At trial, the prosecutor presented evidence of both bodily injury and mental anguish, and the trial court instructed the jury on both "mental anguish" and "personal injury." However, bodily injury and mental anguish "are merely different ways of defining the single element of personal injury," and, when instructed on multiple theories, jury unanimity is not required regarding which specific type of "personal injury" occurred. *Asevedo*, 217 Mich App at 397. Consequently, while the jury clearly made a finding of "personal injury," there is no way to discern whether the jury's verdict represents a finding of bodily injury and/or a finding of mental

---

[3] Defendant argues on appeal that the trial court erred by scoring OV 3 because "bodily injury" is an element of CSC I under MCL 750.520b(1)(f) and OV 3 may not be scored "if bodily injury is an element of the sentencing offense." MCL 777.33(2)(d). Contrary to this argument, bodily injury is not necessarily an element of CSC I; rather, as charged, "personal injury" is an element of the offense, and it encompasses, among other things, bodily injury and mental anguish. MCL 750.520a(n); *Asevedo,* 217 Mich App at 397. Because there was sufficient evidence of mental anguish in this case, bodily injury was not needed to establish the "personal injury" element, and it was not improper for the trial court to score five points for OV 3 based on bodily injury.

anguish. For this reason, we cannot conclude that the scoring of either OV 3 or OV 4 was supported by the jury's verdict. Nor were these facts admitted by defendant.

Further, the scoring of these variables affected defendant's minimum sentence range. As scored, defendant's total OV score was 40 points, which is within level III. See MCL 777.62. Without the scoring of OVs 3 (five points) and 4 (10 points), defendant would have a total OV score of 25 points, which falls within OV level II (20-39 points) with a corresponding guideline range of 81 to 168 months. See MCL 777.62; MCL 777.21(3)(a); MCL 777.16y. Because the scoring of these variables affected the recommended minimum sentencing range, and the trial court sentenced defendant within the resulting range, defendant has made a threshold showing of potential plain error warranting a *Crosby* remand. See *Lockridge*, 498 Mich at 394-395, 399.

The precise procedure to be followed on remand was set forth in *Lockridge* as follows:

> [O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by [MCR 6.245], if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the circumstances existing at the time of the original sentence. [*Lockridge*, 498 Mich at 398 (footnote, quotation marks, and citation omitted).]

### III. PROSECUTORIAL ERROR

Defendant next argues that several instance of prosecutorial error denied him a fair trial.[4] In particular, defendant argues that the prosecutor impermissibly (1) referenced facts in his opening statement that were not proven during trial, (2) usurped the jury's role and expressed a personal belief in defendant's guilt, and (3) denigrated defendant as well as his defense theory.

A defendant must raise a timely and specific objection in the trial court in order to preserve the issue of prosecutorial error on appeal. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). Because defendant failed to preserve his claim, the issue is unpreserved and reviewed for plain error. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). "[W]e cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Id.* at 329-330.

The test of prosecutorial error is whether the defendant was denied a fair and impartial trial. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). "[A] prosecutor's

---

[4] Defendant raises the remaining issues in a Standard 4 brief. See Michigan Supreme Court Administrative Order 2004–6, Standard 4.

comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *Callon*, 256 Mich App at 330. "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *Unger*, 278 Mich App at 236. "They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id.* However, a prosecutor may not express a personal opinion regarding defendant's guilt or denigrate defendant with intemperate remarks. *People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995). An opening statement in particular "is the appropriate time to state the facts that will be proved at trial." *Ericksen*, 288 Mich App at 200. If a prosecutor indicates during his opening statement that he intends to prove a particular fact and then fails to do so at trial, reversal is not warranted unless the defendant can show bad faith or prejudice. *People v Wolverton*, 227 Mich App 72, 76; 574 NW2d 703 (1997).

In this case, defendant first argues that he was denied a fair trial when the prosecutor stated several allegedly "unfound" facts during his opening statement. Specifically, defendant complains about two statements the prosecutor made while describing the events that occurred in the bathroom. The prosecutor said: "He picks her up forcibly; puts her legs around him" in the shower and "he then takes her out of the shower forcefully and physically and lays her on the ground . . . ." The prosecutor committed no error in making either statement. Although the victim may not have used the word "forcibly" during her description of the assault, it is clear from her testimony that force was used and that the incident occurred as the prosecutor described during his opening statement. The victim testified that defendant "put [her] up on the bathroom wall and kind of like put [her] legs around him." She also testified that defendant "pulled [her] out of the shower," and later that he "flipped [her] over" onto her back. Given the victim's testimony at trial, the prosecutor's opening statements appropriately provided "a fair view of what the evidence would show." *Ericksen*, 288 Mich App at 200.

Similarly, defendant also complains that the prosecutor said during opening statement that the victim's "good friend . . . comes over; gets there as soon as she can; it takes her some time; sees her crying, heaped over in the other bathroom . . . ." Defendant asserts that the prosecutor said that the friend "*found* [the victim] crying in the bathroom on the floor," but that the friend testified at trial that she found the victim "passed out." Again, the prosecutor committed no error in making these statements. First, defendant is factually incorrect about the prosecutor's statement. The prosecutor never used the word "found." Second, the prosecutor's description was a fair representation of the friend's testimony. The friend testified that when she arrived the victim was not "necessarily sleeping, but she like had her eyes closed and was laying on the ground," and that when the victim became more aware she "was just kind of like hyperventilating, and kind of hysterical." Overall, we see nothing improper in the prosecutor's opening statement and, even if the prosecutor had indicated in his opening statement that he would prove these particular facts and then failed to do so, reversal would not be warranted because defendant has not shown bad faith or prejudice. *Wolverton*, 227 Mich at 76.

Next, defendant asserts that the prosecutor inappropriately stated during closing argument that defendant was not an "honest person," and that he was "a liar," "a cheat," and "a

manipulator."[5]  Defendant contends that by making these remarks the prosecutor expressed his personal opinion of defendant's guilt, usurped the jury's role, and denigrated defendant as well as his defense theory.  Taken in context, the prosecutor made the remarks in the course of discussing defendant's various excuses for his conduct and his inconsistent remarks to police. For example, the prosecutor stated:

> He knows of no reason why [the victim's] making this up.  He's given numerous opportunities by the detective to explain, why would she do this?  Why would she fall asleep, cry rape?  I don't know.  I don't know.  Beats me, when you find out, tell me.  That's what he says, over and over again.
>
> And then this thing about, [I do not need to rape someone because] "I can get it from my wife anytime I want it.  In fact she wanted it that night."  So why the heck is he naked in the shower with our victim?  He admits cheating on his wife before.  He's not an honest person. . . . [T]hen, inexplicably, he says, "But I haven't [cheated] recently"--even though he's claiming he did it that night.  He said, "I did it early on when the relationship was still fresh." . . . He's cheating on [his wife] while [their relationship] is still fresh.  This shows you something about this guy's morals, and he wants you to believe him.  He's a liar, a cheat, a manipulator.  He says he treated [the victim] like a slut.  That's the only reason he could think of as to why she might say this.  He treated her like a slut – so he admits that.  He [said he] "f------ her and left."  But at another point, he says, "I helped her up and I gave her a hug."

Contrary to the arguments raised by defendant, when considered as a whole, the prosecutor did not express a personal opinion of defendant's guilt, usurp the jury's role, or impermissibly denigrate defendant and his defense.  Rather, the prosecutor's remarks were, in context, an argument, based on the evidence presented, that defendant's claim of consent was not worthy of belief.  See *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997).  The prosecutor was not required to confine his arguments to the blandest of all possible terms, *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007), and the use of pejorative terms like "liar" or "manipulator" did not render this argument improper.  Cf. *Steanhouse*, slip op at 17.

Moreover, even assuming some impropriety in the prosecutor's remarks, defendant would still not prevail because a timely objection and cautionary instruction could have cured any prejudice from the prosecutor's brief comments.  See *Callon*, 256 Mich App at 329-330.  In fact, the trial court instructed the jury that the attorney's statements were not evidence; that the jury should only accept things that an attorney said that are supported by the evidence or by its own common sense; and that the jury was to decide the facts of the case, including whether to believe a witness, based on the evidence.  "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors."  *People v Abraham*, 256 Mich App 265, 279; 662

---

[5] Defendant also asserts that the prosecutor called him a "bad guy," but we were unable to find that statement on or near the page of the trial transcript cited by defendant.

NW2d 836 (2003). Accordingly, defendant has not established prejudice, and his claim of prosecutorial error is without merit.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, argues that counsel provided ineffective assistance by (1) failing to object to the instances of prosecutorial error detailed above, and (2) failing to inform defendant of his right to take a polygraph examination before trial as set forth in MCL 776.21(5).

Defendant failed to preserve his claim of ineffective assistance by moving for a new trial or requesting an evidentiary hearing. *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000). In the absence of a motion for new trial or an evidentiary hearing, our review is limited to the existing record. *People v Thomas*, 260 Mich App 450, 456; 678 NW2d 631 (2004).

To establish ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Mack*, 265 Mich App 122, 129; 695 NW2d 342 (2005). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Defendant also bears the burden of establishing the factual predicate of his claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

In this case, defendant first claims that counsel was ineffective for not objecting to all of the prosecutor's statements discussed above. However, insofar as the prosecutor's statements were proper, any objection would have been futile and counsel cannot be ineffective for failing to raise a meritless objection. *Snider*, 239 Mich App at 425. Moreover, given that any potential prejudicial effect from the statements was cured by the trial court's instructions, *Unger*, 278 Mich App at 235, defendant cannot establish that the outcome of the proceedings would have been different had his counsel objected to the prosecutor's allegedly improper statements. *Mack*, 265 Mich App at 129.

There is likewise no merit to defendant's claim that his trial counsel was ineffective for failing to inform him that he had a right to take a polygraph examination.[6] This Court's review is limited to mistakes apparent on the record, and, on the instant record, there is no evidence that counsel failed to inform defendant that he could take a polygraph examination, no evidence that defendant would have passed a polygraph examination, and no evidence that the charges would have been dropped even if defendant had passed a polygraph examination. Accordingly, because none of these things are apparent on the record, defendant has not established the factual predicate of his claim, and he has not carried his burden of showing that counsel's performance fell below an objective level of reasonableness. See *Douglas*, 496 Mich at 592. Likewise, given

---

[6] Pursuant to MCL 776.21(5), a defendant charged with a criminal sexual conduct offense "shall be given a polygraph examination or lie detector test if the defendant requests it."

that there is no evidence that defendant would have passed such a test or avoided trial by taking such a test, defendant cannot establish that a polygraph examination would have affected the outcome of the trial. *Mack*, 265 Mich App at 129. Indeed, "even if defendant had taken and passed a polygraph test, the results would not have been admissible at trial." *People v Phillips*, 469 Mich 390, 397; 666 NW2d 657 (2003). On this record, defendant's claim of ineffective assistance of counsel must fail.

Defendant's convictions are affirmed but we remand for proceedings consistent with *Crosby* and *Lockridge*. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Joel P. Hoekstra
/s/ Douglas B. Shapiro